# Western Union Telegraph Company *v.* Morrison.

### Damages for Nondelivery of Telegram.

(Decided January 9, 1917.   Rehearing denied February 10, 1917.
**74 South. 88.**)

1. **Telegraphs and Telephones; Nondelivery; Complaint; Special Damages.**—The purpose in alleging special damages, that is, such damages as are the natural and probable but not the necessary consequences of the breach, is to guard against surprise, and the complaint alleging a failure to deliver a telegram announcing the illness of plaintiff's son, and requesting that his other children be brought to him is not subject to demurrer because it fails to aver that if the telegram had been delivered, the other children would have come, as every breach of contract imports at least nominal damages, and all general necessary damages may be proved without particular averments.

2. **Pleading; Demurrer; Office.**—Improper allegations concerning damages may not be tested by demurrer, but should be reached by motion to strike, or objections to evidence, or special requested instructions.

3. **Telegraphs and Telephones; Damages; Complaint.**—In an action for failure to deliver telegram announcing the illness of plaintiff's son and requesting that his other children be brought to him, the probability that the other children would have been brought if the telegram had been delivered, is only evidence as to the special damages for mental anguish suffered, and need not be pleaded.

4. **Same.**—A complaint for a breach of a contract to deliver a telegram alleging that defendant in consideration of the payment to it "by and for" plaintiff undertook to deliver a telegram is not insufficient as implying that plaintiff was the beneficiary of the contract, not one of the parties to it.

5. **Same; Contract; Agency.**—Where plaintiff instructed another to send a telegram for him he clothed him with power and authority to employ such sub-agents as might be necessary and proper, and it was a question for the jury whether persons participating in sending the telegram were agents of plaintiff.

6. **Same; Nondelivery; Damages.**—The voluntary payment by the sender of the charges for the telegram after he knew that the telegram was not delivered does not bar his remedy for the breach of the contract to deliver.

7. **Same; Breach of Contract.**—A sender of a telegram can establish the contract of delivery by proof that the person delivering the message to the telegraph company was acting in behalf of plaintiff. as his agent or sub-agent, and that the company accepted it for transmission; it not being necessary to make proof of the agency of each intermediary in delivering the message to the company.

8. **Same; Instructions.**—Charges asserting that the jury must find for defendant unless they found that another was the agent of the plaintiff in filing the telegram with defendant for transmission, excluded the inference from the evidence that such person was the agent of defendant and also the

[Western Union Telegraph Company v. Morrison.]

inference of implied contract derived from the acceptance by defendant of a message signed by plaintiff, and were refused without error.

9. New Trial; Motion.—Where a motion for a new trial was predicated upon errors of law, the motion should point them out.

10. Appeal and Error; Waiver of.—Where assignments of error are not discussed in brief or argument of counsel they are deemed waived.

11. Appeal and Error; Review; Finding of Court.—Where the affidavit in support of a motion for new trial tended strongly to show that the jurors rendered a quotient verdict, but one of the jurors positively denied any agreement to that effect, the reviewing court cannot say that the trial court plainly erred in overruling the motion.

12. Trial; Misconduct of Jury; Quotient Verdict.—Where there was no prior agreement or understanding between the jurors that they would return a verdict for an amount ascertained by placing the amount each juror found for plaintiff, then aggregating such amount and dividing the result by twelve, the verdict was not bad, notwithstanding the amount returned was an amount which could be reached in this manner.

13. Venue; Personal Injuries; Breach of Contract.—In an action for breach of a contract to deliver a telegram, proof of the breach establishes plaintiff's right to nominal damages, and under such circumstances damages for mental anguish may be added; hence, the essence of the action is the right to recover nominal damages, and it is not an action for personal injuries within the meaning of § 6112, Code 1907.

APPEAL from Hale Circuit Court.

Heard before Hon. B. M. MILLER.

Action by N. M. Morrison against the Western Union Telegraph Company. Judgment for plaintiff, and defendant appeals. Affirmed, and application for rehearing overruled.

The complaint is as follows:

Plaintiff claims of defendant the sum of $1,500 damages for that heretofore, to wit, on April 4, 1914, defendant, in consideration of the payment to it by or for plaintiff of a certain sum of money, or of the liability incurred by the plaintiff to pay a certain sum of money, undertook to transmit and deliver from Moundville, Ala., to John M. Morrison, at Pell City, Ala., a message, which plaintiff caused to be delivered to it on the aforesaid date, at its office in Moundville, Ala., informing him that a son of plaintiff was at the point of death, and requesting him to bring plaintiff's children at once to Moundville; that said John M. Morrison is plaintiff's brother-in-law, and the children referred to in said message are plaintiff's son and daughter; that defendant was put on notice by the text of said message that a nondelivery of it would cause plaintiff mental anguish; that defendant breached said contract, in that defendant failed to

deliver said message to John M. Morrison, and as a proximate consequence of defendant's failure to deliver said message plaintiff was deprived of the comfort and consolation of the presence of his said children at the death and burial of his said son English, and plaintiff was caused much injury to his feelings and great mental anguish by reason of the fact that he was deprived of the presence of his children, and by reason of the fact that his said children were not present at the death and burial of his said son, their brother.

The plea in abatement was as follows:

And now comes Western Union Telegraph Company, defendant in the above-styled cause, by its attorney, and appearing specially for the purpose of interposing this plea to the jurisdiction and none other, for separate plea to the complaint and to each count thereof, separately and severally, says that this court ought not to have and maintain jurisdiction of the alleged cause of action set up therein, for the said defendant avers that the alleged cause of action set up therein, if any plaintiff has, did not arise, nor did the injury therein complained of, or the failure, if any, to deliver said message sued on occur, in Hale county, in the state of Alabama, and that plaintiff does not now, nor did he at the time of the commencement of this action, reside in said Hale county, but resides in the county of St. Clair, in the state of Alabama, in which said county defendant does business by agent, and this the defendant is ready to verify. Wherefore, since the said action is brought for a personal injury within the meaning of section 6112 of the Code of Alabama (1907) in a county other than the county in which plaintiff resides, or the injury occurred, the said Western Union Telegraph Company prays the judgment of this circuit court, if said court will or ought to have further cognizance of said action.

On motion for new trial, Thomas E. Knight, one of the attorneys for defendant, made an affidavit relative to the quotient verdict in substance as follows: That the verdict was received in the courtroom by 10 o'clock p. m., and that, within about 20 minutes thereafter, affiant went into the jury room where the jury had been considering their verdict in this case, and in said room found 12 separate slips of paper, wrapped in a single slip of paper; that on the 12 separate slips was entered an amount expressed in figures, and, on the slip in which the separate slips were wrapped, the 12 separate amounts were en-

tered, and the total was ascertained, and this total was divided by 12, and the quotient therefrom was expressed in figures $808; that that was the only verdict for the amount that had ever been rendered in that court since the present courthouse was constructed; and that the entry of the 12 separate amounts upon the single slip of paper, the addition, and the division was in the handwriting of one of the jurors trying the case, i. e., one W. J. Stevenson.

The following charges were refused to defendant:

Assignments 17 and 19 embrace charges 3 and 5, and were the affirmative charges.

Assignment 15, embracing refused charge 1:　The court charges the jury that under the evidence in this case they cannot award plaintiff any damages for mental suffering.

Assignment 16, embracing charge 2:　Same as 1.

Assignment 18, embracing charge 4, same as 1.

Charge 6:　The court charges the jury that if they are reasonably satisfied from the evidence in this case that plaintiff ascertained that the telegraph to said John M. Morrison had not been delivered at Pell City, and that thereafter plaintiff paid defendant's agent charges for the transmission of said telegram, then such payment by plaintiff was voluntary on the part of plaintiff, and he cannot in this action recover damages for mental anguish or pain.

Assignment 21, charge 7:　The court charges the jury that unless they are reasonably satisfied from the evidence in this case that said Jordan Ramey was acting as agent of plaintiff in telephoning in said message to the agent of the Postal Telegraph Company at Moundville, Ala., and that the agent of the Postal Company, after getting said message, was the agent of plaintiff in filing said message for transmission with defendant, then the jury must find the issue in favor of defendant.

Assignment 24, charge 10: Unless the jury are reasonably satisfied from the evidence in this case that said B. F. Elliott in writing said telegram at Moundville was acting as the agent of plaintiff, then the jury must find the issues in this case for the defendant, notwithstanding the fact that the jury may find from the evidence that, some days after the telegram had been transmitted from Moundville, plaintiff paid defendant's agent at Moundville the charges for the transmission of said telegram.

Assignment 25, charge 11: The court charges the jury that, if they believe from the evidence that said telegram was intended for the benefit of plaintiff and his two children, they must find a verdict for defendant, unless the jury also believe from the evidence that in filing said telegram by said Jordan Ramey and George B. Pickens, with defendant for transmission to said John M. Morrison, said Ramey and Pickens were acting as agents of plaintiff.

Assignment 28, charge 15: Unless you are reasonably satisfied from the evidence in this case that said Ramey, Elliott, and Pickens were each successively the agent of plaintiff in filing said message with defendant for transmission, then your verdict must be for defendant.

Assignment 30, charge 16: The judgment must be for defendant in this cause, unless the jury are reasonably satisfied from the evidence that said Ramey and Pickens were the agents of plaintiff in filing said telegram with defendant for transmission, or unless they are reasonably satisfied from the evidence that said telegram was intended for the sole benefit of plaintiff.

Assignment 22, charge 8: If you believe from the evidence in this case that the telegram in question was intended for the benefit of plaintiff, and of his two children, then the jury must find for defendant, unless the jury are reasonably satisfied from the evidence that said agent Pickens was the agent of plaintiff in filing said message with defendant for transmission to said John M. Morrison.

Assignment 23, charge 9: Practically same as 8.

Assignment 26, charge 12: If you believe from the evidence in this case that plaintiff made a trip to Pell City after the death of his son, and that he there found out that the telegram in question had never been delivered to said John M. Morrison, and that thereafter, with knowledge of the facts that said telegram had not been delivered if the jury should find such to be the facts, plaintiff paid charges to defendant's agents at Moundville for the transmission of said telegram, then the jury must find the issue in favor of defendant.

Assignment 27, charge 13: If you are reasonably satisfied from the evidence in this case that plaintiff did not pay defendant or defendant's agent at Moundville any money as charges for the transmission of said telegram until after plaintiff had made a trip to Pell City, and had found out that the telegram

had not been delivered, then such payment was voluntary on the part of plaintiff, and plaintiff cannot recover of defendant in this action any amount of money for mental anguish.

The telegram was as follows:

To John B. Morrison.   Come at once, August now almost dead.   Bring the children.   Norman Morrison.

FORNEY JOHNSTONE, W. R. C. COCKE, ALBERT T. BENEDICT, FRANCIS R. STARKE, and THOMAS E. KNIGHT, for appellant. SMITH & MORROW, EDWARD DEGRAFFENRIED, and EVINS & JACK, for appellee.

EVANS, J.—Appellee (plaintiff below) instituted his action to recover damages for failure to deliver a telegram sent to his brother-in-law from Moundville, in Hale county, to Pell City, in St. Clair county, advising that appellee's son was at the point of death and requesting sendee to bring appellee's children to Moundville.   The action was ex contractu.

The complaint contained but one count, which the reporter will set out.   The message was of such character as to advise appellant that mental pain and anguish might ensue from a breach of the contract.   A plea in abatement was timely interposed, challenging plaintiff's right under the venue statute (section 6112, Code 1907) to institute his action in Hale county, inasmuch as plaintiff was a resident of St. Clair county and the default or failure to deliver said message occurred also in St. Clair county.   The trial court sustained demurrers to the plea; and even if it be conceded that the demurrers should have been overruled, as the plea contained appropriate averments as to plaintiff's residence and the company's business in St. Clair county, and also a denial that the "injury occurred" in Hale county, yet the plea could not have been sustained under the facts of the case as we interpret section 6112; and the ruling upon demurrer, though erroneous, was innocuous.—*Going, pro ami, v. Ala. Steel & Wire Co.*, 141 Ala. 537, 37 South. 784.

(1-3) We think the complaint sufficient to withstand the attack of the demurrers, and the ruling of the trial court thereon was not erroneous.   Some of the demurrers were inapt as applied to an action ex contractu, and others were general.   The question of agency between the plaintiff and the person actually sending the telegram for plaintiff is not specifically raised by

demurrer; and, while we do not express an opinion as to whether such a demurrer would be well or ill taken, we are of the opinion that the complaint was good as against the demurrers filed. One ground of demurrer argued challenges the sufficiency of the complaint because it failed to aver that plaintiff's children could or would have been present at the death and burial, had the telegram been promptly delivered; and counsel cite in support thereof a recent opinion by this court.—*Western Union Tel. Co. v. Hawkins,* 14 Ala. App. 295, 70 South. 12. A suit ex contractu setting up the contract and showing the breach counted on is sufficient as against demurrer, for every breach of a contract imports nominal damages in the absence of proof of actual damages, and all general or necessary, as contradistinguished from special damages, may be proved without particular averments, for defendant is presumed to have notice that such are claimed; the purpose of particularity in the averment or claim of special damages—i. e., such as are the natural and proximate, though not the necessary consequence of the breach—is to put defendant on notice that such will be claimed at the trial and prevent surprise. It is not the office of a demurrer to test damages improperly claimed; the count should rather be purged by motion to strike, or objections to the evidence, or be limited through charges to reach such vice.—*Ala. Gt. Sou. R. R. Co. v. Tapia,* 94 Ala. 226, 10 South. 236; *L. & N. R. R. Co. v. McCool,* 167 Ala. 644, 52 South. 656; *Treadwell v. Tillis,* 108 Ala. 262, 18 South. 886; *B'ham, Ry. Lt. & P. Co. v. Tate,* 7 Ala. App. 517, 61 South. 32. Good pleading requires that the ultimate facts and not evidential facts be presented for issue. Here the question of whether the children could not or would not have attended the death bed and funeral, which the demurrer would compel as a necessary averment of the complaint, has only a probative or evidential bearing upon the proof of plaintiff's case, to wit, the proximate cause of the special damages for mental anguish. The holding in *Western Union Tel. Co. v. Hawkins, supra,* in so far as it conflicts with the views herein expressed, is overruled.

Code, § 6112, reads: "A foreign or domestic corporation may be sued in any county in which it does business by agent; but all actions for personal injuries must be brought in the county where the injury occurred, or in the county where the plaintiff resides, if such corporation does business by agent in the county of plaintiff's residence."

[Western Union Telegraph Company v. Morrison.]

The questions then arise: (1) Was this ex contractu action one for "personal injuries," within the meaning of said section; and, (2) where did the "injury occur," within the meaning of that phrase as used in said section?

In *Hatcher v. South. Ry. Co.*, 191 Ala. 634, 68 South. 55, which was an action ex delicto for the breach of duty in the carriage of a passenger, the court had this section before it and there said:

"The argument for appellant in support of the first-stated contention necessarily resolves itself into the affirmation of the proposition that a 'personal injury,' to come within the purview of section 6112, must be a direct physical hurt to the body. This court, in the case of *Garrison v. Burden*, 40 Ala. 513, 515, 516, while interpreting the phrase 'injuries to the person,' in the statute governing the survival of actions—a phrase at least susceptible of an interpretation more favorable to the appellant's view of the proper meaning of the words 'personal injuries' in section 6112—it was expressly ruled that the signification and effect of the phrase could not be restricted to 'direct physical hurts to the body of a person.' The soundness of the stated doctrine of the cited decision has been particularly recognized in *Long v. Booe*, 106 Ala. 570, 17 South. 716. The like doctrine was reiterated and illustrated in the case of *Jefferson Fertilizer Co. v. Rich*, 182 Ala. 633, 62 South. 40. It is well and generally settled, we think, that injuries to the person or personal injuries comprehend mental distress, annoyance, inconvenience, humiliation, and such other manifestations of disturbed or perturbed feelings as ordinary persons are supposed to be subject to. The following authorities may, in that connection, be read with interest and profit: *Sou. Ry. Co. v. Hobson* [4 Ala. App. 408] 58 South. 751; *Morton v. W. U. T. Co.*, 130 N. C. 299, 41 S. E. 484; *W. U. T. Co. v. Kauffman* (Tex. Civ. App.) 107 S. W. 630; *McKenzie v. Doran*, 39 Mont. 593, 104 Pac. 677; *Johnson v. Bradstreet*, 87 Ga. 79, 13 S. E. 250; *McDonald v. Brown*, 23 R. I. 546, 51 Atl. 213, 58 L. R. A. 768, 91 Am. St. Rep. 659; *Hutcherson v. Durden*, 113 Ga. 987, 39 S. E. 495, 54 L. R. A. 811; *State v. Ross*, 24 N. D. 586, 139 N. W. 1051; *Riddle v. MacFadden*, 201 N. Y. 215, 94 N. E. 644. We do not think the question is debatable."

The question then recurs: Since the plaintiff elects to waive the tort and sue for the breach of the contract, does he ipso facto so alter his action that it cannot be said to be one for "personal

injuries?" In other words, what stamps the action as one for "personal injuries," the form or the subject-matter?

The intrinsic, substantive nature that inheres in the right of action cannot be lost sight of because the fancy of the pleader, electing between the concurrent remedies of assumpsit and case, prefers to present his grievance in the garb of the former rather than the latter. If this be not true, then the pleader could choose his venue at will, the statute to the contrary notwithstanding; so the court will have regard to the substance rather than the form to ascertain whether the action be one for "personal injuries" as that phrase is used in said section 6112.

Assuming then the action sub judice to be one for "personal injuries," did the "injury occur" in Hale county, in the sense that that phrase is employed in section 6112?

This section brings forward in the Code 1907 the amendatory venue act relating to personal injury suits enacted March 5, 1903 (Acts 1903, p. 182), and the then and prior existent general venue statute (section 4207, Code 1896) has been brought forward and codified in the present Code as section 6112. These two statutes, being in pari materia, should be construed together. Section 6110 reads: "All actions on contracts, except as may be otherwise provided, must be brought in the county in which the defendant, or one of the defendants, resides, if such defendant has within the state a permanent residence; all other personal actions, if the defendant, or one of the defendants, has within the state a permanent residence, may be brought in the county of such residence, or in the county in which the act or omission complained of may have been done, or may have occurred. All actions for the recovery of land," etc.

Just what was in the legislative mind in using the phrase "where the injury occurred" in section 6112 is not altogether clear or free from difficulty. At common law, personal actions were transitory and might be brought wherever service could be had upon the person. Our venue statutes, being in derogation and abridgement of this privilege, are not to derive anything by way of intendment so as to be extended beyond the express enactment of the legislative will.

Ordinarily, the paramount consideration in determining the place to institute suit is: Where did the cause of action arise, i. e., where did the unlawful act or omission take place? The word "injury" in a technical sense ordinarily signifies a tort

and is defined by Bouvier as "a wrong or tort," and of simliar import is 22 Cyc. 1064. "Injury" implies an unlawful invasion of one's rights, and hence imports at least nominal damages. The words "injury" and "damage" are not infrequently confounded and used loosely as synonymous or interchangeable, whereas in strictness they are widely variant, bearing to one another the relation of cause and effect; the injuria being the unlawful invasion of one's rights or property, whereas the damnum is the extent or measure of that invasion. So that if technical significance be given the words of the statute, "where the injury occurred," it would refer to a tort and mean where the cause of action arose; in the instant case meaning the default in delivery of the message, which was in St. Clair county.

But we are of the opinion that when the Legislature employed the phrase "injury occurred," in section 6112, it did not have in contemplation or intend the technical signification of that phrase, drawing the distinction above indicated; but rather employed it loosely in the popular sense of where the damage occurred or "accident" took place. This interpretation is in a measure superinduced and fortified by reference to section 6110, Code 1907 (section 4205, Code 1896). It will be observed that this section, before the amendment in section 6112, fixed and controlled the venue for all personal actions—tort and contract—fixing the venue (1) in both tort and contract actions at the residence of the defendant (or one of the defendants), and (2) in cases of tort "in the county in which the act or omission complained of may have been done, or may have occurred."

One of the changes wrought by the amendment reversed the condition as to residence, providing that actions for personal injuries be brought in the county of the plaintiff's instead of defendant's residence; the other, that suit be brought "in the county where the injury occurred," instead of "in the county in which the act or omission complained of may have been done, or may have occurred." Had the Legislature no intention to legislate upon any other subject except the plaintiff's or defendant's residence, undoubtedly the amendment would have related only to that phase of the matter; but it is significant that the amendment also fixed the venue where the "injury occurred," instead of employing the language of the old statute, "where the act or omission occurred."

We doubt whether the unusual or anomalous condition ever occurred to the legislative mind that the act or omission might occur in one county and the damages proximately flowing therefrom in another, but rather that the injuria and damnum were regarded as so intimately interwoven and correlated as to be coincident in locality.

In giving effect and operation to the legislative intent, instances will readily occur to the mind where it would be difficult, if not impossible, to localize the damages, as might readily be done with regard to the tort or cause of action, e. g., the mental anguish of the sender of a death message might be suffered in a half dozen counties by reason of the deprivation of comfort and consolation on a funeral train, or where an express messenger contracted pneumonia on his route because of failure or negligence in heating of his car. It would be quite a difficult, if not impossible, thing to say that the messenger contracted his cold in one county rather than another; so that, where the damage is suffered in more than one county, the plaintiff may bring his action in any county in which he suffers damage, electing in which he will sue.

We do not consider the effect of section 232 of the Constitution upon the venue in this case; for aught that appears from the pleadings, the appellant may be a domestic corporation, construing the complaint most strongly against the pleader. It follows from what we have said that, since appellee suffered damage in Hale county and was a resident of St. Clair county, either forum was open to him.

A review of the several assignments of error relating to the testimony does not, we think, disclose prejudicial error.

(4) It is argued that the complaint fails to show a contractual relation between the parties to the suit, because the averment is that: "The defendant in consideration of the payment to it by or for the plaintiff of a certain sum of money or of the liability incurred by the plaintiff to pay a certain sum of money undertook," etc.

In other words, that the complaint is no stronger than its weakest alternative averment, and non constat if money was paid "for" the plaintiff he may be a stranger to or beneficiary of the contract and perchance not the sole beneficiary, and predicated on this supposed absence of a contractual relation a number of refused charges were asked and are now assigned as error.

(5) While the complaint may be said to be somewhat inartificially drawn, it is not open to the criticism directed against it, for its meaning is certain to a common intent and it would be a strained and unreasonable construction that would infer plaintiff to be a beneficiary and not a party to the contract.    Plaintiff's testimony showed that he was a mile or mile and a half out of Moundville in Hale county at the bedside of his son.    When the son was at the point of death, plaintiff instructed one H. J. Dockery to send the telegram in question.    In order to send the message, Dockery had to employ the telephone and also enlist the services of one or two other people to get the telegram to appellant's office; and on the question of the agency of these intermediaries certain of the refused charges are predicated. Suffice it to say that, when the appellee instructed Dockery to send the telegram, he clothed him with such authority as might be necessary or proper to effectuate the purpose of having appellant receive and send the message.    The relation of principal and agent does not depend on express appointment and acceptance, but it may be implied from the words and conduct of the parties and the circumstances of the case.—31 Cyc. 1217.    Then, too, appellee might have ratified and confirmed what his agent Dickery did.    However, these questions of agency and contract were for the jury.

(6-8) We have carefully reviewed appellant's written requests for charges.    Under the issues and tendencies of the testimony charges embraced within assignments 17 and 19 were properly refused, being requests for the general affirmative charge.    Charges embraced within assignments 15, 16, and 18, were also properly refused, being invasive of the province of the jury.    Charge No. 6 embraced in assignment 20 was properly refused as misleading and invasive under the complaint as framed, for, if a valid contract was made and appellee had "incurred liability" for the fee or toll, its voluntary payment would not relieve the defendant from liability for breach of the contract.    Charges embraced within assignments 21, 24, 25, 28, and 30, were properly refused, because there was no requirement upon the plaintiff that he should, in order to sustain his action, show a successive line of agencies or subagencies operating through the several parties or intermediaries assisting in delivering the message to the defendant company for transmission. It was enough if the proof showed that the person delivering the

message to the defendant company was acting in behalf of plain-. tiff as his agent or subagent, and that the defendant company accepted it for transmission. Charges embraced within assignments 22 and 23 were properly refused, because they predicated nonliability unless the jury found that the contract was made for the sole benefit of plaintiff or that Geo. B. Pickens was agent of plaintiff, and non constat the evidence afforded an inference he might have been defendant's agent in receiving the message, which would have fastened liability upon the defendant upon its subsequent acceptance for transmission; and, further, because it pretermits consideration of all question or inference of an implied contract to be derived from the company's acceptance of a telegram signed in the name of plaintiff.

Assignments 26 and 27: The voluntary payment of the consideration after the breach of the contract did not relieve the defendant from liability for damages resulting from a breach of contract.

(9) Assignments Nos. 29, 31, 32, 33, 34, and 35, will be treated as waived, as they are not discussed in appellant's brief.

(10) A motion for a new trial predicated upon errors in law should point them out.—*Moneagle & Co. v. Livingston,* 150 Ala. 562, 43 South. 840; *Ewart Lumber Co. v. American Cement Plaster Co.,* 9 Ala. App. 152, 62 South. 560; *Ala. Mid. Ry. Co. v. Brown,* 129 Ala. 282, 29 South. 548; *Winter & Loeb v. Judkins,* 106 Ala. 259, 17 South. 627.

(11, 12) A verdict and judgment was had for $808; but upon the motion for a new trial appellee entered a remittitur of $308, thus reducing the amount to $500. A further insistence of the motion for a new trial is that the jury arrived at its verdict illegally, i. e., by means of a quotient verdict. A reading of the affidavit of Thomas E. Knight, of counsel for defendant, would very strongly convince one that such was the case; but one of the jurors testified in opposition to the motion and very positively denied that any agreement or understanding was entered into by the jury, and that, on the contrary, it was explained or mentioned in the jury room that such an agreement would vitiate the verdict. He did testify, however, that the amounts were set down by each juror and then the aggregate was divided by 12 to ascertain the quotient; but the juror testified that it was understood that this procedure should not be binding upon any of the jury, and, in fact, thereafter the matter was further discussed

[Western Union Telegraph Company v. Morrison.]

for some time before rendering the verdict. The test is a pre-concerted understanding or agreement to abide the result; and, as the trial judge heard the testimony, we are unable to say that he plainly erred in his conclusion upon the motion.—*B'ham Ry., Lt. & P. Co. v. Moore,* 148 Ala. 115, 42 South. 1024.

After careful consideration of this record, we find no reversible error, and the judgment of the trial court is affirmed.

Affirmed.

## ON REHEARING.

BROWN, J.— (13) On the original consideration of this case, the writer entertained the view that the demurrers to the defendant's plea in abatement were properly sustained, and hence concurred in the conclusion that the judgment should be affirmed. The reasons impelling this conclusion are that the cause of action declared on is the breach of a contract, and the plaintiff's right of recovery is dependent upon his right to recover damages separate and distinct from such as may have resulted from mental anguish.—*Blount v. W. U. T. Co.,* 126 Ala. 105, 27 South. 779; *W. U. T. Co. v. Krichbaum,* 132 Ala. 535, 31 South. 607. When the plaintiff establishes his right to recover damages for the breach of the contract, though it be only nominal damages, then damages for mental pain and anguish "may be superadded."— *Blount v. W. U. T. Co., supra; W. U. T. Co. v. Rowell,* 153 Ala. 295, 45 South. 73.

This being true, the right to recover nominal damages in this case is the sine qua non of the cause of action; and the suit is, in theory and substance, an action on contract, and not an action for personal injuries within the meaning of section 6112 of the Code. The Constitution (section 232) fixes the venue of suits against foreign corporations that have qualified to do business in this state in this language: "Such corporation may be sued in any county where it does business."

The other members of the court concur in these views, and the application for rehearing is overruled.

Application overruled.