11 So.2d 740

## SANDERS v. STATE.

### 6 Div. 61.

Supreme Court of Alabama.

Jan. 14, 1943.

Rehearing Denied Feb. 18, 1943.

J. B. Ivey, of Birmingham, for appellant.

Wm. N. McQueen, Atty. Gen., and John O. Harris, Asst. Atty. Gen., for the State.

LAWSON, Justice.

This appeal is from a conviction of murder in the second degree.

The defendant, Henry Sanders, was tried on an indictment charging murder in the first degree, and was convicted by the jury of murder in the second degree, and his punishment was fixed at forty years' imprisonment in the penitentiary.

That the defendant shot Alf Arnold, the deceased, with a pistol and that Arnold died as a result thereof is without dispute. The defendant pleaded self-defense.

Several persons who witnessed the shooting, and the officers who arrived at the scene shortly thereafter, testified for the State. Their testimony may be summarized as follows:

During the early hours of the morning of December 7, 1941, the deceased and the defendant "had some words" at Bush's Cafe, a cafe for colored people, located on 4th Avenue between 25th and 26th Streets, Birmingham, Alabama. Thereafter, on the same morning, sometime between two and three o'clock A. M., the deceased went to the Blackhawk Cafe, situated on the corner of 4th Avenue and 26th Street, only a short distance from Bush's Cafe. Within thirty minutes after the deceased entered the Blackhawk Cafe, and while he was telling a friend that he and the defendant had "had some words" at Bush's Cafe, Sanders came into the Blackhawk, with a pistol in his hand, which he pointed in the direction of the deceased, admonishing others to "stand back," as he was going to kill Arnold. Arnold and those standing near him scattered in an effort to obtain cover, Arnold trying to hide behind one Boykin Williams, who pulled away and reached safety behind a counter on the opposite side of the room. The defendant fired several shots, one hitting Arnold on the left side of his neck, approximately halfway between his chin and his collar bone, breaking his neck and causing his death. The deceased had no weapon in his hand when Sanders came into the Blackhawk Cafe and had made no effort to injure Sanders in any way at the time the fatal shot was fired. After the deceased fell, a "switch blade" knife with blood on it was found about eight or ten inches from his head. He fell on his face with his left arm under him and with his right arm outstretched. According to the testimony of one of the investigating officers, a cigarette was between the first and second fingers of the outstretched right hand, while another officer testified that the cigarette was near the right hand but not in it. One witness for the State testified that the knife was found under the deceased when his body was moved. The defendant made no effort to flee, but was in custody at the "City Hall" within a short time after the shooting, where he was examined and no evidence of any wound or cut place was found on him.

The defendant testified in his own behalf. His version of what transpired is substantially as follows:

That he and the deceased had an argument in Bush's Cafe during the early

hours of the morning of December 7, 1941, and the proprietor ordered them to leave. That after they had left the cafe the deceased ran after him, cursing and threatening to cut his throat if he caught him, but Sanders evaded the deceased after he had been chased to 25th Street, about one-half block from Bush's Cafe. That he saw Arnold go south on 25th Street in the direction of 3rd Avenue, whereupon he (Sanders) went in the opposite direction on 25th Street, finally returning to 26th Street by means of an alley and then proceeded to the Blackhawk Cafe, not knowing that the deceased was there. That as he entered the Blackhawk Cafe, the deceased started toward him, brandishing an open knife in a threatening position, saying, "Here is that ——— now." That he, the defendant, had a pistol in his overcoat pocket, which he had with him even while he was being chased by the deceased. That he pulled the pistol from his pocket, pointed it at the deceased, and told him to "get back," but that the deceased continued to advance toward him holding his "switch blade" knife in a "raised stabbing position." That the first time he pulled the trigger the pistol snapped and that the first shot which was fired missed the deceased, who continued to advance toward him. That he shot at the deceased three times in all, with either the second or third shot killing the deceased. That after he saw that he had hit Arnold he backed out of the door through which he had entered, and proceeded to the police station, after going by his home to leave his pistol with his wife.

The defendant's testimony as to what transpired at Bush's Cafe was corroborated to a large degree by two witnesses who testified in his behalf. According to their testimony, the defendant and the deceased were asked to leave the cafe by the proprietor, whereupon the deceased ran after the defendant, threatening to cut his throat with a knife which he held in his hand if he caught him. Neither of these witnesses were present at the Blackhawk Cafe at the time of the fatal shooting. The testimony of another witness, called by the defense, was in most respects in accord with the testimony of the witnesses for the State. He testified that he was present in Bush's Cafe when the deceased and the defendant had an argument, but that he did not hear the deceased curse the defendant nor did he see the deceased with a knife, although he did see the deceased run after the defendant. He further testified that he was in the Blackhawk Cafe at the time of the shooting and that the defendant entered the cafe with a pistol in his hand and said to the deceased, "I ought to kill you"; that the defendant started back out of the cafe as if to leave, but turned and said "you all move back," and then began to fire; that he did not hear or see the deceased threaten the defendant in any way.

■ Refused charges Nos. 11, 12, 23, 24, 25 and 26 were requests for the affirmative charge as to all degrees of homicide. They were correctly refused. The evidence on every material inquiry was in sharp conflict except as to the fact that the defendant shot the deceased. To hold that the defendant in this case was entitled to the general affirmative charge would be but to ignore entirely the evidence for the State and that of defense witness Tom Stevens, who corroborated to a large degree the testimony of witnesses for the State. The State insisted that the killing was unprovoked, unjustified, and hence unlawful, and offered testimony to sustain this insistence. On the other hand, the defendant insisted, under his plea of self-defense, that he took the life of Arnold in order to save his own life and that in so doing he violated no law of the State; and in this connection presented evidence tending to sustain him in this insistence. As a result of the foregoing conflict in the evidence a jury question was, of course, presented. Walker v. State, 220 Ala. 544, 126 So. 848; Witherspoon v. State, 168 Ala. 87, 53 So. 271.

■ There was no error in refusing charge No. 14. This type of charge has been referred to as a "supposition charge" and has been denounced as improper. Richardson v. State, 191 Ala. 21, 68 So. 57; Hollingsworth v. State, 227 Ala. 54, 148 So. 845. The charge is also bad for the reason that it was calculated to mislead the jury to believe the evidence adduced by the State alone should prove defendant's guilt, whereas it is their duty in determining the question of guilt to consider also the testimony introduced by the defendant. Johnson v. State, 133 Ala. 38, 31 So. 951; Williams v. State, 161 Ala. 52, 50 So. 59.

■ Charge No. 35 was held bad in the case of Richardson v. State, supra.

■ The court in its splendid oral charge and in written charges given at

the request of the defendant fully covered the law as to the presumption of innocence which attended the defendant and for that reason the refusal of charge No. 39 would not justify a reversal. Moreover, this charge was held bad in the case of Bell v. State, 140 Ala. 57, 37 So. 281, and Williams v. State, 144 Ala. 14, 40 So. 405.

█ Charge No. 45 was properly refused for the reason, among others, that it is confused and misleading. An indictment for murder in the first degree includes lesser degrees of homicide, for which there could be a conviction even though the defendant had not intended to kill the deceased. The charge is capable of the construction that the defendant could not be convicted of any degree of homicide unless he had intended to kill Arnold. Smith v. State, 130 Ala. 95, 30 So. 432; Fowler v. State, 155 Ala. 21, 45 So. 913; Carter v. State, 205 Ala. 460, 88 So. 571.

█ Charge No. 50 was correctly refused in that it completely ignores the question of defendant's freedom from fault in bringing on the difficulty, the evidence being in conflict as to who was the aggressor. Carter v. State, 82 Ala. 13, 2 So. 766; Hudson v. State, 217 Ala. 479, 116 So. 800.

█ The trial court did not err in refusing charge No. 51 for the reason, among others, that it pretermitted the element of honest belief of defendant in the imminency of his peril. Mathews v. State, 136 Ala. 47, 33 So. 838; Parker v. State, 153 Ala. 25, 45 So. 248; Pippin v. State, 197 Ala. 613, 73 So. 340. It is also confused and misleading.

█ Charge No. 52 is obviously bad. It is confused, misleading and does not state a correct principle of law. It assumes that a person has the right to kill to prevent the perpetration of any crime under any circumstances. Such is not the law.

█ Charge No. 53 was properly refused. The law of self-defense was substantially and fairly covered in the court's oral charge and in written instructions given at the request of the defendant and furthermore the charge is defective because it pretermitted all reference to the doctrine of retreat. Gordon v. State, 129 Ala. 113, 30 So. 30; King v. State, 233 Ala. 198, 171 So. 254; Danley v. State, 27 Ala.App. 402, 173 So. 648, certiorari denied 234 Ala. 75, 173 So. 649.

█ Charges Nos. 48, 49, 55, 57 and 59 were fully covered in the court's oral charge and written charges given at request of defendant and their refusal was not error. Section 273, Title 7, Code of 1940; Davis v. State, 197 Ala. 667, 73 So. 369; Arant v. State, 232 Ala. 275, 167 So. 540.

The insistence made by counsel for appellant that it is error for the trial court to refuse to give a charge requested by the defendant in writing, even though the principle contained therein has been fully covered by the court's oral charge or by written charges given at the request of the defendant, is untenable. In support of his contention counsel cites the cases of Polly v. McCall, 37 Ala. 20; Edgar v. State, 43 Ala. 45; and Williams v. State, 47 Ala. 659, all of which were decided prior to the passage of Act No. 716, S. 549, p. 815, approved September 25, 1915, which act is now codified as Section 273, Title 7, Code of 1940. The language of Section 273, supra, expressly provides that it shall not be cause for reversal for the trial court to refuse to give a requested written charge if it appears that the same rule of law was substantially and fairly given to the jury in the court's general charge or in charges given at the request of the parties. Such has been the uniform holding of this court since the passage and approval of the 1915 act, supra. Davis v. State, supra; Arant v. State, supra; 6 Ala.Dig., Criminal Law, ☞ No. 829(1).

█ State's witness J. R. Davis testified on direct examination that the Blackhawk Cafe "had one door entering into it." On cross-examination he testified that the front entrance consisted of double doors. Thereupon counsel for the defendant propounded the following question to the witness: "Then, you were mistaken about there being just one door there." The court sustained the State's objection to the question and the defendant excepted to the court's ruling. The trial court did not err in sustaining the objection of the State. The question was purely argumentative. The extent of cross-examination rests largely in the discretion of the trial judge.

█ The trial court did not commit reversible error in sustaining objections interposed by the solicitor to questions propounded by counsel for defendant as to

whether or not the witness would say that the knife which was found close to the body of the deceased was a deadly weapon. The question called for an expression of opinion by the witness as to a question which was for the determination of the jury, the knife having been introduced in evidence.

■■ During the direct examination of an eye-witness, the solicitor asked the following questions and the following answers were given: "Q. Did you ever see Alf Arnold go up to this man here with a knife? A. No, sir. Q. At that time? A. No, sir." Counsel for defendant objected and excepted to the action of the court in overruling the objection. All the circumstances and conditions surrounding the actual killing are matters pertinent to the issues involved, and the actions of the deceased immediately prior to the time he was shot were a part of the res gestae. There was no error in overruling the objection. George v. State, 240 Ala. 632, 200 So. 602; Brown v. State, 21 Ala.App. 214, 107 So. 29; Sexton v. State, 239 Ala. 287, 196 So. 744. Likewise the trial court correctly permitted an eye-witness to testify that when the defendant entered the building and pointed his pistol at the deceased, the deceased tried to get behind another person.

■ It was not error to sustain the solicitor's objection to questions asked by defense counsel as to whether or not the witness had heard the investigating officers say that the defendant had turned himself over to the authorities and was in jail. The question not only called for hearsay testimony but for incompetent testimony. Hendley v. State, 200 Ala. 546, 76 So. 904. The defendant, however, was permitted to testify that he surrendered to the authorities of his own volition, without any objection on the part of the State.

■ On cross-examination of one of the investigating officers, counsel for defendant propounded the following question: "Now, in your investigation, did you or not find that the defendant came up 4th Alley North and entered at the North door, or did he come from towards 4th Avenue and enter the South front door?" Objection by the State was sustained. The question called for hearsay testimony and the court properly sustained the State's objection. Griffin v. State, 155 Ala. 88, 46 So. 481; Burrow v. State, 23 Ala.App. 99, 121 So. 449.

■ The trial court did not commit reversible error in sustaining the solicitor's objection to the question, "It is a knife, the length of the blade of which is longer than is allowed to be carried by a private citizen, is it not?" The question called for immaterial testimony. The knife was in evidence and the fact that it might have been unlawful for a private person to carry a knife of that size had no bearing on the issues in the case.

■ The solicitor for the State on the cross-examination of defense witness Bates asked the following question: "This man here, this defendant, got mad because that boy would not let him have a dollar, didn't he?" Defendant's objection was overruled. The witness answered: "I told the officers that, what they were arguing about, Alf would not let Henry have a dollar on his overcoat, as a pawn for a dollar?" The witness did not answer that part of the question relating to the defendant being mad and the answer made by the witness was merely repetition of what had been brought out by counsel for defendant on direct examination as to what occurred at Bush's Cafe. Any error in asking the witness if the defendant was mad is harmless as to the defendant, it not being shown that the question was answered. Plant v. State, 140 Ala. 52, 37 So. 159. No reversible error appears in this connection.

■ Counsel for appellant insists that the trial court erred to a reversal in permitting the State to ask on the cross-examination of a character witness for the defendant if the witness had ever heard that the defendant had killed another man, one John Moore. There is no merit in the contention. This court in many cases has held that a witness who has testified to a defendant's good character may be asked on cross-examination, for the purpose of affecting his credibility, whether or not he had heard of the defendant being previously charged with certain other offenses. Harrison v. State, Ala.Sup., 40 So. 57; Ragland v. State, 178 Ala. 59, 59 So. 637; Bell v. State, 170 Ala. 16, 54 So. 116; Kelly v. State, 17 Ala.App. 577, 88 So. 180.

Defendant made a motion for a new trial and contended among other things that the jury had rendered a quotient verdict. The motion for new trial was overruled. In support of this contention, counsel for the defendant testified that after the jury had returned their verdict he went

into the jury room where he found a sheet of paper upon which was written several columns of figures, one of which has been totaled. In addition to the several columns of figures the words "Life" and "Death" and the letters "L" and "D" appear on the paper in several places. He further testified that as soon as he found the paper he called it to the attention of the trial judge, who at that time noted thereon that it had been "found in jury room just while jury was being discharged." Counsel testified that he found other sheets of paper of the same color in the jury room but that none of them had been written on in the same manner as the sheet which he had shown to the court. The sheet of paper bearing the endorsement of the trial judge was introduced in evidence. On both sides of the paper appear pencil memoranda in the form of tallies, in columns, apparently relating to the degree of the offense, whether first degree murder, second degree murder, or manslaughter, with the penalty in years set out thereunder. Only one of the columns contains as many as twelve entries. All of the other calculations may be laid aside as obviously casual, random or incomplete. The single column worthy of any notice is headed "2nd" with eleven numbers listed thereunder from 20 to 50, then a line and the sum of 390. Below this some figures appear to have been entered and then scratched out. Then appears the number 90 below which a line was drawn and the number 480 written, which is the sum of 390 and 90. No quotient appears, but if 12, the number of jurors, had been divided into 480, the quotient would have been 40, the punishment fixed by the jury.

The State offered the testimony of W. E. Mashburn and T. W. Collins, two of the jurors, to sustain the verdict. Mashburn's testimony may be summarized as follows: That he was foreman of the jury and that there was no prearranged agreement on the part of the jury or the individual members thereof to add up the number of years which the individual jurors determined upon as punishment for the defendant, and to divide such sum by 12, the number of jurors, and to be governed by the quotient thus received. That a suggestion of that nature was made by one of the jurors, but that he told the jury that such a verdict would not be legal. On cross-examination the witness testified that he was not an attorney, and that the jury had not been charged as to the effect of a quotient verdict, but that he had studied law to some extent. That the writing on the paper in question was not his and that he did not know who had written on the paper. That he could not positively swear that the paper had been in the jury room but that it was the same kind of paper that was in the jury room and used by several members of the jury, including himself, in recording the "20 to 30 ballots" taken by the jury. That the jurors who wrote down the results of the various ballots were acting as individuals and not for the jury or under direction of the jury. That the number of years which each man felt was the proper punishment was recorded but there was no addition or division as far as he knew. That many written ballots were taken and considerable oral discussion had during the twenty-four hours that the jury was out. That on the morning that the verdict was reached, a large number of sheets of paper, similar to that in question, was used in recording the ballots of the individual jurors but that there was never any agreement that the punishment for the defendant be arrived at by adding the number of years fixed by the individual members of the jury, and dividing the sum so reached by 12.

The testimony of juror Collins was in all material respects the same as that of the juror Mashburn and need not be here set out.

 It has been repeatedly held by this court that a verdict is not a true verdict which is the result of any arbitrary rule, or order, whether imposed by the members of the jury, or by the court or officers in charge. If a jury should agree in advance that their verdict should be the result or quotient of a division by 12 of the sum total of all the jurors' separate assessments, a verdict brought about by such an agreement ought to be set aside. Southern Ry. Co. v. Williams, 113 Ala. 620, 21 So. 328; International Agr. Corp. v. Abercrombie, 184 Ala. 244, 63 So. 549, 49 L.R.A.,N.S., 415; New Morgan County Building & Loan Ass'n v. Plemmons, 210 Ala. 286, 98 So. 12; George's Restaurant v. Dukes, 216 Ala. 239, 113 So. 53.

 The rule is, however, that in order to render a verdict objectionable and subject to vacation on the ground that it was a quotient verdict, it devolves upon the assailant of the verdict to show by

competent evidence that the jury adopted this plan in arriving at a verdict, and that they agreed in advance to be bound by the result of such proceeding. The vitiating fact is the agreement in advance to abide by the result. Birmingham R., Light & Power Co. v. Moore, 148 Ala. 115, 42 So. 1024; Bank of Tallassee v. Elmore Fertilizer Co., 16 Ala.App. 465, 78 So. 648; Henderson Land & Lumber Co. v. Brown, 16 Ala.App. 453, 78 So. 716.

The question here presented is whether, under the rules we have declared, a reasonable and satisfactory presumption arises from the facts stated that the verdict in the case was the result of such an agreement.

■ It has been held that where there are shown figures used by the jury in its deliberations, fairly inferring that the verdict was a quotient, the court will so hold, and unless the contrary is shown, will also hold the verdict was result of a previous agreement. Mobile & O. R. Co. v. Watson, 221 Ala. 585, 130 So. 199; George's Restaurant v. Dukes, supra; Southern Ry. Co. v. Williams, supra.

■ The paper with the memoranda thereon which was found in the jury room does nothing more than, perhaps, create a suspicion that some improper method might have been indulged in by the jury in reaching a verdict. The fact that several columns of figures appear on the paper in addition to the one which was totaled is entirely consistent with the view that one of the individual jurors had used the paper for the purpose of recording the various ballots taken by the jury. If an individual member of the jury had adopted this plan of ascertaining what he deemed to be a proper verdict, and, after having done so, submitted same to the jury, who, after deliberating thereon, agreed to it as their verdict, it was a true verdict. Harris v. State, 241 Ala. 240, 2 So.2d 431; Bank of Tallassee v. Elmore Fertilizer Co., supra; Alabama City, G. & A. R. Co. v. Lee, 200 Ala. 550, 76 So. 908.

■ The testimony of the jurors was positive and direct to the effect that there was no agreement entered into by the members of the jury that they would abide by the result of any such calculations. In fact, they denied knowledge of the fact that any member of the jury had totaled the vote of the individual members. We do not think the circumstances here shown are sufficient to impeach the legality of the verdict, either in reason or under the former decisions of this court. Harris v. State, supra; City of Dothan v. Hardy, 237 Ala. 603, 188 So. 264; St. Louis-San Francisco R. Co. et al. v. Swaney, 216 Ala. 454, 113 So. 410; Harvey v. Warren, 212 Ala. 415, 102 So. 899; Henderson Land & Lumber Co. v. Brown, supra; Bank of Tallassee v. Elmore Fertilizer Co., supra; Western Union Tel. Co. v. Hill, 163 Ala. 18, 50 So. 248, 23 L.R.A.,N.S., 648, 19 Ann.Cas. 1058; Western Union Tel. Co. v. Morrison, 15 Ala.App. 532, 74 So. 88; Birmingham Ry., Light & Power Co. v. Moore, supra; Birmingham R., Light & Power Co. v. Clemons, 142 Ala. 160, 37 So. 925.

The evidence in this case as it relates to the verdict of the jury is entirely different from that in the cases of International Agr. Corp. v. Abercrombie, 184 Ala. 244, 63 So. 549, 49 L.R.A.,N.S., 415, and Ledbetter v. State, 17 Ala.App. 417, 85 So. 581, and therefore those cases are not here controlling.

■ Counsel for appellant has strenuously argued in brief that the trial court erred in permitting the jurors to testify on behalf of the State in an effort to sustain the verdict. That this is permissible has been decided in numerous cases. Harris v. State, supra; City of Dothan v. Hardy, supra; George's Restaurant v. Dukes, supra; Western Union Tel. Co. v. Morrison, supra; Birmingham Ry., Light & Power Co. v. Moore, supra.

The judgment is affirmed.

Affirmed.

All the Justices concur.