248 So.2d 148

**Jorge A. LAZARTE**

**v.**

**CITY OF MOUNTAIN BROOK.**

**6 Div. I.**

Court of Criminal Appeals of Alabama.

Oct. 6, 1970.

Rehearing Denied Nov. 17, 1970.

Sam C. Pointer, Jr., Birmingham, for City of Mountain Brook.

McCollough & McCollough, Birmingham, for appellant.

ALMON, Judge.

Jorge A. Lazarte was convicted in the Recorders Court of the City of Mountain Brook for driving while intoxicated in violation of a city ordinance and fined $100.00. From that conviction he appealed to the Circuit Court of Jefferson County pursuant to Tit. 37, § 587, Code, 1940. See also § 464 of the same Title. He was tried de novo in the circuit court and again convicted and fined $50.00. From the judgment of conviction in the circuit court he brings this appeal.

Appellant contends that the circuit court lacked jurisdiction because the complaint was signed by the city prosecutor and not the "solicitor" as provided in Tit. 15, § 363, Code, 1940, as follows:

> "The trial in the circuit court shall be de novo, and without any indictment or presentment by the grand jury; but the *solicitor* shall make 'a brief statement of the cause of complaint signed by him. * * *" (Emphasis added.)

Tit. 37, § 594, Code, 1940, provides that city recorders shall have original and con-current jurisdiction with the county court or courts of like jurisdiction of all misdemeanors committed within the city or town, etc.

Therefore, cases appealed from recorders courts can be either city cases or state cases depending upon whether the particular offense is denounced by state law or municipal ordinance. Here, the prosecution in the recorders court was based on a violation of a municipal ordinance and consequently would be considered a city case on appeal. All the cases cited to us by the appellant as requiring the signature of the circuit solicitor (or district attorney) were so called state cases and would not be controlling in this instance.

The present case is one for the violation of a municipal ordinance and not a state misdemeanor. The complaint avers the substance of the ordinance, the adoption by the city, and its violation by the appellant. The ordinance so referred to was introduced in evidence without objection along with a companion ordinance which prescribed the penalty.

This distinction between state cases and city cases is recognized in Tit. 37, § 588, Code, 1940, as follows:

> "* * * and the court may also on motion of the solicitor or his assistant where the prosecution is in the name of the state, or on motion of the attorney prosecuting for the city or town where the prosecution is in the name of the city or town, or in the absence of such motion ex mero motu, dismiss such appeal. * * *"

Moreover, the next section, 588(1), dealing with fees, refers to "municipal solicitor".

Although we have found no case directly in point, we perceive the rule to be simply that a complaint in a circuit court on appeal from a recorders court should be signed by the circuit solicitor (or district attorney) when it is a state case, and by the municipal or city attorney

when it is a city case. See Williamson v. City of Greenville, 39 Ala.App. 237, 97 So. 2d 600; Pearson v. City of Huntsville, 42 Ala.App. 458, 168 So.2d 24.

What we have said concerning the above jurisdictional question, strictly speaking, may be considered mere dictum since there was no assignment of error. Nevertheless, the question must be resolved, because, had we held the failure of the district attorney to sign the complaint fatal to the prosecution in the circuit court, no assignment of error would have been necessary. This is not unlike the age-old dilemma of which comes first, the chicken or the egg.

Appellant filed a motion seeking a new trial on the ground that the verdict rendered by the jury was a quotient or gambling verdict. The denial of this motion was properly assigned as error. A number of slips of paper were introduced in evidence at the hearing by defense counsel. He testified that he found the slips of paper in the juryroom immediately following the rendition of the verdict.

■ To establish a quotient verdict, the appellant must submit evidence from which a fair inference may be drawn that the jury through an antecedent agreement bound themselves to abide by the results of the quotient process. If this is shown, the trial judge should set the verdict aside unless the State offers other evidence to refute it. Ordinarily, this is done by calling jurors to support the validity of their verdict. George's Restaurant v. Dukes, 216 Ala. 239, 113 So. 53; Mobile & O. R. Co. v. Watson, 221 Ala. 585, 130 So. 199; Sanders v. State, 243 Ala. 691, 11 So.2d 740.

■ From the testimony it appears that some slips of paper had sums of dollars in figures marked on them; others had "guilty" written on them; and still others had "yes" written on them. It is not clear from the transcript of the testimony how many slips of paper there were in all or how many of each kind there was. It is not clear whether there were slips of paper

indicating any process of addition or division. The slips of paper in evidence were not sent to this court and cannot now be obtained, apparently having been lost. In view of the record before us, we must conclude that the trial judge was correct in denying appellant's motion for a new trial because the evidence offered did not raise a fair inference of a quotient verdict.

For the foregoing reasons, we conclude that the judgment appealed from should be

Affirmed.

CATES, Judge (dissenting).

Waller v. Florida, 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435, has tolled the demise of the separate sovereignty concept of cases such as City of Mobile v. Allaire, 14 Ala. 400; Engelhardt v. State, 88 Ala. 100, 7 So. 154; Harris v. State, 128 Ala. 41, 29 So. 581; Black v. State, 144 Ala. 92, 40 So. 611; Bell v. State, 200 Ala. 364, 76 So. 1; Howell v. City of Fort Payne, 246 Ala. 315, 20 So.2d 880; Pike v. City of Birmingham, 36 Ala.App. 53, 53 So.2d 394; Shields v. State, 39 Ala.App. 57, 94 So.2d 226; and Inman v. State, 39 Ala.App. 496, 104 So.2d 448.

Moreover, Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469, has made this double jeopardy rule retroactive.

A peculiar (if not unique) Alabama municipal institution, the "reference" ordinance is here brought into question. This mode of enactment is one which by reference makes offenses against the State (excluding felonies) also offenses against the municipality. See Ex parte Davis, 200 Ala. 436, 76 So. 368; and Casteel v. City of Decatur, 215 Ala. 4, 109 So. 571.

It might be contended technically that there is no former jeopardy until there is a second prosecution. However, another question inherent in State public policy arises, that is if a city prosecutes first the State's power has been preempted.

Before *Waller*, supra, this predicament was possible only under a statute, e. g. § 1222 of the 1907 Code, which in part provided:

"* * * When any person has been tried by any municipal court for a misdemeanor or for violation of an ordinance committed within the police jurisdiction of the municipality, the judgment shall bar a prosecution for the same, or substantially the same, offense in the state courts and when a person has been tried for a misdemeanor in the state courts the judgment shall bar a prosecution for the same, or substantially the same, offense in the municipal court."

This § 1222 was not carried into the 1923 Code. In other words, it was repealed. Dawson v. City of Birmingham, 216 Ala. 641, 114 So. 221.

In the Constitution of 1901, § 170 provides:

"The style of all processes shall be 'The State of Alabama,' and all prosecutions shall be carried on in the name and by the authority of the same, and shall conclude 'against the peace and dignity of the state.' "

As pointed out in Harper v. State, 41 Ala. App. 188, 126 So.2d 232, this provision operates against private courts. Compare Magna Carta, C. 24, as to pleas of the crown, iv Bl.Com. 424.

Hence, if against this State background we superimpose this new concept revealed in *Waller*, supra, it is obvious that the notion of "scrambling prosecution" as once enunciated by § 1222 of the 1907 Code can only be restored by a reenactment of the substance of the quoted part of that section.

Until the Legislature acts, I think that in all potential dual prosecutions that the spirit of § 170, supra, requires in a recorder's court that the State file a formal waiver of its right to prosecute for a misdemeanor.

Presumably this could be done by the District Attorney or his deputy. Otherwise, the recorder must sit as a State judge and the fine go to the county and any incarceration be in the county jail.

As an aside, I think that in a case of a second prosecution, if there is no plea of autrefois convict, there could be a conviction. However, I think that either on coram nobis or on Federal habeas corpus such a judgment would be set aside on grounds either of inadequate counsel (for failure to file such a plea) or lack of an intelligent waiver of the right to plead and bar the second prosecution. Henry v. Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408.

Specifically the Mountain Brook ordinance reads as follows:

"Unlawful for any person under the influence of intoxicating liquor * * * to drive any vehicle upon any highway within the City * * *."

The counterpart on the State statute books is Code 1940, T. 36, § 2, as amended, which reads in pertinent part:

"It shall be unlawful for * * * any person who is intoxicated to drive a motor vehicle upon any highway[1] of this state. * * *."

Since the City of Mountain Brook sought to prosecute without the consent of the District Attorney, its originating complaint to me, under *Waller*, supra, and § 170 Const. 1901, was nugatory. However, under Code 1940, T. 15, § 222, the State has, in the case *sub judice*, let the time for prosecution expire.

As to the claim of error as to the court's ruling on the propriety of the verdict, I think the appellant is entitled—not to a new trial—but to a further hearing of his motion for a new trial. I think there was raised an administrative presumption of an agreement to make a gambling verdict.

---

1. Code 1940, T. 36, § 1(12), as amended, defines highway broadly and expressly includes inter alia streets, avenues, alleys.

In Southern Railway Co. v. Williams, 113 Ala. 620, 21 So. 328, we find the following:

"A true verdict is the voluntary conclusion of the jury after deliberate consideration, and it is none the less a true verdict, because the respective jurors may have been liberal in concessions to each other, if conscientiously and freely made. A verdict is not a true verdict, the result of any arbitrary rule or order, whether imposed by themselves, or by the court, or officer in charge. If a jury should agree in advance that their verdict should be the result or quotient of a division by twelve of the sum total of all the jurors' separate assessment, a verdict brought about by such an agreement ought to be set aside. * * *.

"Some of the amounts are placed as low as $25. Others range to $1,500. If jurors should bind themselves to return a verdict, the result of such a method, it is apparent that one or two jurors, by resorting to extremes, could force an unfair verdict."

Then in International Agri. Corp. v. Abercrombie, 184 Ala. 244, 63 So. 549, it is said:

"The evil effects of a quotient verdict cannot be cured by agreeing thereafter to a slightly different verdict, if it appears that the agreement made in advance entered into or induced the result; nor can a quotient verdict be cured by the jury subsequently adopting it, or its equivalent, as their verdict, if the agreement entered into or controlled the subsequent adoption of the verdict returned. * * *."

This principle is carried over into criminal cases also. See Harris v. State, 241 Ala. 240, 2 So.2d 431, from which we quote:

"The rule of the cases is that it is misconduct on the part of the jurors, justifying a reversal, for them to agree, after they have found accused guilty, that each

shall set down on paper the term of imprisonment or the amount of fine which, in his opinion, should be assessed, that these sums shall be added and the total divided by twelve, and the quotient thus reached accepted as the verdict of the jury. * * *."

For the purposes of this case, I find the opinion of Bouldin, J., in George's Restaurant v. Dukes, 216 Ala. 239, 113 So. 53, as most appropriate:

"Courts have much regard for the verdicts of juries, and are indisposed to presumptions tending to overturn them. But, in view of the ease [2] with which the winning party may produce explanatory evidence in cases of this kind, and the inability of the losing party to obtain other than circumstantial evidence, we think the rule in the Williams Case convenient of application and conservative of justice.

"In this case no evidence from jurors or other source was offered to question the connection of these papers with the verdict, or to otherwise explain their implication. The division and resulting quotient does not appear on the papers found. The exact quotient of $3,285, divided by 12, would be $273.75. Each of the numbers entering into the footing ends with 0 or 5; the amount fixed by each juror being a multiple of $5. The verdict for $175 was the nearest number representing the figures in the minds of those writing numbers on the slips of paper. In such case the variance does not relieve the verdict of presumption against it. * *."

The use of individual unidentified slips, it seems to me, could distort the total more likely than where the jury foreman would call the roll in the jury room and ask each juror to give the oral opinion of what to assess. See Fortson v. Hester, 252 Ala. 143, 39 So.2d 649. In other words, the prejudicial presumption from the separate slips

2. I have gone to the original record of opinions, Vol. 117, which uses the word "ease" rather than "case" as shown by the Ala. and So. reports.

would seem stronger than where the jurors cannot cloak bias with anonymity as when they are polled by the foreman.

Of course, either method is vicious if it springs from agreement beforehand to cast lots with the life, liberty or purse of a party.

I should belabor the obvious to draw a detailed moral of the foregoing quotations. The *Dukes* case, supra, I think should control here.