2 So.2d 431

**HARRIS v. STATE.**

**6 Div. 796.**

Supreme Court of Alabama.

May 22, 1941.

Beddow, Ray & Jones, of Birmingham, for appellant.

Thos. S. Lawson, Atty. Gen., and John W. Vardaman, Asst. Atty. Gen., for the State.

242

THOMAS, Justice.

The conviction was for murder in the second degree.

The defendant, Arthemus Harris, was tried on the indictment charging murder in the first degree and was on the 27th day of March, 1940, convicted by the jury of murder in the second degree and his punishment was fixed at 35 years' imprisonment in the penitentiary.

There is evidence in the record that the defendant went to the home of one Minnie Bell Walden. When he arrived there another negro named Will Ballard was present. The two negroes and the woman got into a discussion with reference to the right of a railroad employee to ride on a pass. The parties manifested an abusive manner and there was a personal assault threatened. The negro invited Arthemus to leave. He went out of the house. The negro woman latched the screen door when she let Arthemus, the defendant, out and went into the back of her house. Immediately thereafter she heard the words, "Don't shoot," and immediately after that the report of a pistol fired and Will Ballard was shot in the back, from which injury he died. No curse words were then used.

The defendant himself says that after he went out of the house he heard the cry, "Don't shoot," and turned with his face back toward the door and saw the deceased negro with his hands reaching for his pocket and immediately fired.

The defendant plead self defense. He contends that the deceased hit him in the mouth, and that as he was going out the door he heard Lee Wright say, "Don't shoot." As he turned around, he contends, he saw the deceased grabbing at his pocket as though he were trying to get a pistol out of it, and that Lee Wright grabbed him by his left arm and whirled him around and that he (defendant) was in a "motion to shoot, and so he shot." After the shooting, which occurred on Saturday night, the defendant fled the scene of the crime and did not surrender himself until Monday.

■ Defendant made a motion for a new trial and contended, among other things, that the jury had rendered a quotient verdict. In support of this contention, counsel testified that after the jury had returned their verdict, he started out of the court house with a man by the name of Nick Tedeski. He testified that he and Mr. Tedeski walked down to the corner of the building, and upon thinking of something, he and Mr. Tedeski turned around and went back to the court room. Upon entering the jury room, the attorney found in the cuspidor a piece of paper, upon which there were twelve figures totalled up and divided by twelve, giving a quotient of 37. He further testified that he and Mr. Tedeski washed the paper off and then took it to his office and placed it on a blotter to dry. The next morning the attorney went to the trial of another case and when he returned found that an employee had thrown the paper away. Mr. Tedeski testified to the same effect, with the exception that he thought the quotient was 32 or 32½, rather than 37. The solicitor then called the jurors, Lewis M. Hebard, William M. Reynolds, Ephriam D. Mann and J. K. Adams, to the witness stand and they testified that they had entered into no agreement to render a quotient verdict, and that they had not placed twelve numbers on a piece of paper, totalled them up and divided them by twelve, nor had they authorized or seen any of the jurors do so.

The motion for a new trial is not well founded under the record before us.

■ The rule of the cases is that it is misconduct on the part of the jurors, justifying a reversal, for them to agree, after they have found accused guilty, that each shall set down on paper the term of imprisonment or the amount of fine which, in his opinion, should be assessed, that these sums shall be added and the total divided by twelve, and the quotient thus reached accepted as the verdict of the jury. "There is no error, however, if there was no positive prior agreement to abide by the result of this process, but it is afterward discussed and either adopted or a modification thereof agreed upon. And even though there may have been an agreement, if the jury subsequently refuse to abide by it, and impose a greater or a less punishment than the quotient, there is no error." 16 Corpus Juris p. 1087, § 2552, 23 C.J.S., Criminal Law, § 1374.

■ The reason for the rule that obtains is that "Verdicts found by lot are the issue of ignorance, passion, or indifference to the rights of life, liberty, and property, and [show] an utter disregard for the rules of law and fair deductions that should be made from the evidence." Paducah, etc., R. Co. v. Com., 80 Ky. 147, 151, 3 Ky.Law Rep. 650.

■■ It is further stated of the cases that, "In accordance with the rule that the verdict is vitiated if it is arrived at by chance or lot, it is generally held, although there is some authority to the contrary, that the verdict will be set aside as a quotient verdict if the jury, for the purpose of arriving at their verdict, agree that each member shall set down a sum which he thinks is right, that the aggregate will be divided by twelve, and that they will be bound by the result whatever it may be, and the quotient returned as their verdict. [Mobile & O. R. Co. v. Watson, 221 Ala. 585, 130 So. 199; George's Restaurant v. Dukes, 216 Ala. 239, 113 So. 53; International Agr. Corp. v. Abercrombie, 184 Ala. 244, 63 So. 549, 49 L.R.A.,N.S., 415; Birmingham R., etc., Co. v. Clemons, 142 Ala. 160, 37 So. 925; Southern R., Co. v. Williams, 113 Ala. 620, 21 So. 328.] It is sufficient to vitiate the verdict under this rule that only the greater number of the jurors entered into such an agreement; * * *. If, however, there is no agreement that the average estimate shall be binding, and the averaging of estimates is done merely for the purpose of arriving at a working basis which the jurors are to be free to accept or reject as they see fit, a verdict, to which the jurors subsequently agree, is binding, whether it be for a sum which is the average of the amounts fixed by the individual jurors [Ewart v. Cunningham, 219 Ala. 399, 122 So. 359; Alabama City, G. & A. Ry. Co. v. Lee, 200 Ala. 550, 76 So. 908; Henderson Land & Lumber Co. v. Brown, 16 Ala.App. 453, 78 So. 716; Western Union Telegraph Co. v. Morrison, 15 Ala.App. 532, 74 So. 88, affirmed, Ex parte Western Union Tel. Co., 200 Ala. 496, 76 So. 438], or for some other amount." 64 C.J. pp. 1035, 1036, § 831.

■ That is to say, if there was no agreement in advance to return a verdict for the quotient so found, a verdict will not be set aside. Harvey v. Warren, 212 Ala. 415, 102 So. 899; Birmingham Ry. L. & P. Co. v. Turner, 154 Ala. 542, 45 So.

671; Birmingham Ry. L. & P. Co. v. Moore, 148 Ala. 115, 42 So. 1024; 46 Corpus Juris § 124, p. 157.

■ The burden of proof in such an issue is thus stated by our decisions in Mobile & O. R. Co. v. Watson, 221 Ala. 585, 130 So. 199:

"On showing figures used by jury, fairly inferring that verdict was quotient, court will so hold, and, unless contrary is shown, will also hold verdict was result of previous agreement.

"Evidence of jurors is admissible to sustain, but not to impeach, verdict."

■ We have indicated that the public policy forbids that a juror disclose the deliberations in the jury room, while he may speak of extraneous facts which may have influenced the verdict and which were before the members of the jury while deliberating and before the verdict was rendered. Leith v. State, 206 Ala. 439, 90 So. 687; McCormick v. Badham, 204 Ala. 2, 85 So. 401. The general rule is that the affidavit of a juror may be allowed to disclose facts to sustain the verdict. Leith v. State, supra; City of Dothan v. Hardy, 237 Ala. 603, 188 So. 264, 122 A.L.R. 637.

We are of opinion and hold that under the facts disclosed the verdict rendered was not the result of a quotient agreement, but was rested in and supported by the evidence considered as a whole.

Appellant contends that the trial court committed reversible error in its answer to a question of a juror asked when the trial court had finished its oral charge. The following occurred:

"A Juror: May I ask one question: It seems like there has been a lot of cursing in this case. Does that amount to anything, in law, as far as—

"The Court: Well, cursing would not excuse the murder. It might mitigate it to some extent, from murder in the first degree to murder in the second degree, might have some bearing in that respect. That is my understanding of the law, Mr. Tate.

"Counsel for the State: That is my understanding.

"The Court: That is, evidence of opprobrious language.

"Counsel for Defendant: We except to that statement by the court; also we except to the statement made by Mr. Tate.

"The Court: And that will be considered with the rest of the testimony."

244

 As may be observed, the statement of the court was an unequivocal and responsive answer to the question of the juror. It is settled in this jurisdiction that mere words or gestures, no matter how offensive or insulting, will not reduce a homicide to manslaughter. Roberson v. State, 217 Ala. 696, 117 So. 412.

In Ex parte Sloane, 95 Ala. 22, 23, 11 So. 14, 15, it is declared: " * * * Words of provocation, not accompanied with an assault, or acts evincing an intention to resort to immediate use of force, cannot reduce the killing from murder to manslaughter. The record shows that there was no assault made upon the defendant, and no act indicating an intention to resort to the use of immediate force against him by the deceased."

In the case presently before the Court, the defendant went out of the door and it was latched by the woman. Then the defendant shot the deceased through the screen door, as the exhibit in the record shows, and all the evidence indicates. At the time of the shooting of the deceased in the back, through the latched screen door, there was no assault being made upon defendant and no act indicating an intention to resort to immediate force against him by the deceased. If counsel for defendant wished further explanation, he should have so requested.

The statement of the court to the jury, in response to the juror's question, did not amount to a charge on the effect of testimony that is prohibited by Section 9507, Code of 1923, and authorities cited in Code 1940, Title 7, § 270.

The charges that were refused by the trial court appear in the record. Some of these charges were requests for the general affirmative charge for the defendant and were properly denied under the evidence. McMillan v. Aiken, 205 Ala. 35, 88 So. 135. Five of these refused charges were requested charges on the question of self defense. The trial court in its oral charge gave a full and complete charge as to the elements of self defense. Therefore, the refusal of the charges on self defense does not constitute error. Charge No. 14 is a charge upon circumstantial evidence, which was properly refused. The instruction sought, on the weight to be attached to circumstantial evidence, was properly refused as abstract. The whole evidence was from eye witnesses to the ocurrence and there was no question of circumstantial evidence.

We have examined the record and find no reversible error and the judgment of the circuit court is affirmed.

Affirmed.

GARDNER, C. J., and BROWN and LIVINGSTON, JJ., concur.