39 So.2d 47

## McMICHEN v. STATE.
### 6 Div. 450.

Court of Appeals of Alabama.
Feb. 1, 1949.

Rehearing Denied Feb. 22, 1949.

Beddow & Jones and G. Ernest Jones, Jr., all of Birmingham, and Newton & Selman, of Jasper, for appellant.

A. A. Carmichael, Atty. Gen., and Wm. N. McQueen, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

In answer to the indictment, which charged the defendant with the offense of murder in the first degree, the defendant, upon arraignment, interposed a dual plea, viz.: "Not guilty," and, "not guilty by reason of insanity."

The indictment charged that he "unlawfully and with malice aforethought killed Bill Allen Narramore, by shooting him with a gun or pistol," etc.

Under his plea of not guilty, the defendant relied upon self defense.

There appears no dispute or controversy relative to the fact that the defendant did kill the deceased, named in the indictment, by shooting him with a pistol in Walker County, Alabama, and before the finding of the indictment.

The learned trial judge delivered a full, complete, explicit and correct oral charge to the jury and in this connection instructed the jury, in detail, as to the law of self defense, as it was incumbent upon him in the instant case, that being the controlling issue under the facts adduced upon the trial. As to this the court stated:

"The defendant, in answer to the indictment, pleads not guilty. That places the burden on the State to satisfy you from the evidence beyond a reasonable doubt that the defendant is guilty of some degree of unlawful homicide. Under this plea of not guilty, the defendant invokes the law of self defense. It is necessary that we ascertain what is self defense. If the defendant invokes the law of self defense, it becomes incumbent upon you to determine from the evidence whether he is justified under this plea.

"There are three elements of self defense which must exist before a man can be justified in the taking of human life.

"First, he must be free from all fault in bringing on the difficulty. He must not have said or done anything reasonably calculated under the circumstances to provoke a difficulty, or that did provoke the difficulty in question. He must have been in the attitude of an unwilling fighter, and not of a free and willing fighter. If he was not free from all fault in bringing on the difficulty, or if he was in the attitude of willingly and freely entering into the difficulty, he could not be heard to plead self defense, or cannot be acquitted on the plea of self defense.

"Second, in addition to being free from fault in bringing on the difficulty, the defendant must himself have been in imminent danger, either of loss of his life or great bodily harm at the hands of the deceased, Narramore. The imminent danger must have been either an actual danger, or, if only an apparent danger, it must have had such an appearance of actuality that to a reasonable man it would have seemed that there was actual danger, and the defendant himself must have honestly believed that there was actual, imminent danger. It may be that at the time there was no actual danger. It may be that the apparent danger was not in fact real. But if the defendant honestly believed himself to be in imminent danger, although it was only apparent if he honestly believed himself to be in danger and acted as a reasonable man under like circumstances would have acted, then he would be justified in his act.

"Third, in addition to the two elements of self defense which I have just defined to you, there must have been open to the defendant no reasonable mode or. means of escape whereby he could retreat. That is, no reasonable safe way of escape whereby the defendant could retreat and save himself without increasing his peril. In other words, there must have been at the time he acted no reasonable mode of escape or retreat except to, take the life of the deceased. As stated, if any one of these three elements does not exist, then the defendant cannot be acquitted under the law of self-defense.

"I charge you, in connection with the law of self-defense, that where the defendant undertakes to establish self defense, the burden of proof is on him to show necessity, real or apparent, to take the life of the deceased, unless the evidence which proves the homicide also shows the excuse or justification, but when it has been established by the evidence that there was a present, pressing or impending necessity on the part of the defendant to take life, which involves disproof of an opportunity to safely retreat, then the burden is on the State to show that the defendant was at fault in provoking or bringing on the difficulty.

"Gentlemen, this is the exception which I referred to a few minutes ago, and I repeat: When it has been established by the defendant that there was a present, pressing or impending necessity to take life, which involves disproof of an opportunity to safely retreat, then the burden is on the State to show that the defendant was at fault in provoking or bringing on the difficulty.

"Ordinarily, the burden of proof never shifts from the State in any criminal prosecution. The burden is on the State to satisfy you from the evidence beyond

a reasonable doubt that the defendant is guilty. The burden is never on the defendant to establish his innocence, or disprove the facts necessary to establish the crime of which he is charged; the burden never shifts from the State to prove all necessary elements of the case. In all criminal cases, if the evidence or any part of it after considering it all, leaves in the mind of the jury any reasonable doubt of defendant's guilt, he should be acquitted. It is incumbent upon the defendant to establish his plea of self defense, if the evidence of the State doesn't establish it for him, but he meets the legal requirements if the evidence creates a reasonable doubt as to whether or not he acted in self-defense, and he does not have to satisfy the jury beyond a reasonable doubt that he acted in self-defense. If, therefore, there is a reasonable doubt of defendant's guilt, whether arising from self-defense or other material facts in the case, the defendant is entitled to an acquittal; but no person can bring about a necessity to kill another, even to save his own life, and then plead self-defense.

"Gentlemen, I have stated to you the three essential elements of self-defense. This defendant must have been without fault in bringing on the difficulty; he must have not been disregardful of the consequence in this respect of any wrongful word or act. This doesn't mean that the defendant must be reasonably free from fault, but he must be absolutely and entirely free from all fault in provoking or bringing on the difficulty. Whether the necessity to take the life of the deceased was real or only apparent, if brought about by the design, contrivance, or fault of the defendant, he cannot be excused on the plea of self-defense. This rule of self-defense is based on the general legal maxim that no man can take advantage of his own wrong. The defendant must be mindful of his words and deeds which are likely to produce a deadly combat, and if he invites the combat he must be held to have contributed to the necessity for slaying his adversary, and cannot invoke the doctrine of self-defense. The necessity to take human life, superinduced by the party who

acts under its compulsion, cannot be relied upon by him to excuse or justify his conduct, and applying this principle to the law of homicide, it is the settled doctrine of the courts that when the defendant is the aggressor, or when he is not free from fault in bringing on the difficulty, he can never be heard to acquit himself of liability for its consequence on the ground of self-defense."

■ Pursuant to the foregoing instructions by the court, the first duty of the jury was to ascertain and determine from the evidence whether or not the defendant was free from all fault in provoking or bringing on the difficulty, or whether he entered into the difficulty willingly. We ascertain from the evidence there was but slight, if any, conflict in the testimony on this question. The defendant on direct examination testified, pending a quarrel inside the building one of the combatants invited him outside the house by saying "I'll tell you one thing, I'm not too young to take you outside and beat your damned ————." "I said, 'you don't have to take me outside, I'll go with you.'" And on cross examination the record shows:

"Q. When you said that he was probably too young to remember, he resented it. A. He must have.

"Q. What did he say to you? A. Told me he wasn't too young to take me outside and beat my ————.

"Q. And you jumped up, ready to go? A. Yes sir, I got up but I didn't jump.

"Q. You were willing to go? A. Perfectly willing."

Every witness who testified as to this, the beginning of the fatal difficulty, also testified to the fact that defendant went outside to fight willingly and of his own accord, notwithstanding a number of persons present begged him not to go and not to have any trouble. As stated he did go outside, and the fight started, there and then, resulting finally in the death of the deceased named in the indictment by having been shot with a 45 Calibre automatic pistol, by the accused.

The next inquiry, for the jury to ascertain and determine from the evidence, as instructed by the court, was whether or

not the defendant, at the time of firing the shots, was in imminent danger, either of losing his life or suffering great bodily harm at the hands of the deceased. The evidence shows without dispute, that pending the fight outside the building, the defendant ran to his car parked some distance away, entered the automobile on the left side, opened the glove pocket of the car, secured his Army 45 automatic and hurried back into the building, where deceased had gone, with the gun in his hand. That deceased was hiding behind the counter of the store building and defendant shot and killed him.

The question of flight need not be discussed, as the entire evidence discloses conclusively that the defendant could have fled, as the law requires, without increasing his peril in any manner.

From the foregoing, and also from a superabundance of other evidence of the same import, we are clear to the conclusion that the jury were fully warranted, and justified in returning the verdict to the effect that the defendant was guilty of murder in the second degree.

It having been fully ascertained and determined that defendant's plea of self defense was not available or sustained under the evidence, renders it unnecessary for this court to discuss in detail, the several other exceptions reserved to the rulings of the trial court. We have, as the law requires, considered each and every exception presented, and hold that no error prejudicial to the substantial rights of defendant appears...

Defendant's motion for a new trial was overruled and denied by the court, and to this action an exception was duly and legally reserved. Said motion was predicated mainly upon the ground that the verdict returned by the jury was a quotient verdict. The trial court upon the hearing of this motion went into this matter fully and thoroughly. Numerous witnesses were examined, and the hearing of the motion as transcribed consumed 43 pages of the transcript or record. At the conclusion of the hearing of the motion the trial court rendered a written opinion, and as appears of record is as follows:

"On indictment for murder in the first degree, the defendant was convicted for murder in the second degree, and his punishment fixed at 12 years by the jury.

"Within the time required by law, the defendant filed a motion for a new trial, setting up, among other things, that the verdict returned by the jury was a quotient verdict. Said motion further set out the ground that a member of the jury was permitted to remain away from and out of sight and hearing of the other members of the jury during the trial of the case.

"The defendant does not insist on the last named ground, as the evidence shows the juror in question was separated from the other members of the jury only a few minutes, and did not talk to anyone during that period of time, and this ground was not argued by the attorneys for the defendant on the motion for a new trial.

"On the ground that the verdict was a quotient verdict, the defendant introduced a paper showing twelve figures, which paper was shown by the evidence to be a ballot of the number of years that each juror thought the defendant should serve as punishment. The twelve figures divided showed the number of years to be twelve plus. The verdict rendered by the jury was for murder in the second degree, and fixed defendant's punishment at twelve years in the penitentiary. On the hearing, two jurors testified that the jurors each gave to the foreman of the jury the number of years he thought the defendant should be punished, which was written on the piece of paper introduced in evidence, but the evidence all showed that this ballot was taken not less than an hour and a half before the final verdict was reached in the case. The evidence further showed that the foreman of the jury stated to the jurors that a verdict could not be reached in this manner, and that there was no agreement that the result of the ballot so taken would be the verdict of the jury.

"The evidence of the jurors examined further showed that the jury was in effect polled by the foreman after an agreement had been reached to fix the defendant's punishment at twelve years.

"The motion for a new trial was overruled by the Court, and the defendant in open court duly excepted to the order of the Court overruling and denying the motion.

"The defendant relies principally on the case of Ledbetter v. State [17 Ala.App. 417], 85 So. 581. This case is very much in point, but in the Ledbetter case a full consideration of all the testimony shows that by their acts the jury did agree in advance to a quotient verdict, and that this agreement was carried out. This ruling was made by the Court of Appeals, even though it was flatly denied by the jurors examined on oral hearing that any agreement was made that the addition and division of the amount as indicated would be the verdict of the jury. This Court of course is not in position to know all the testimony taken in the Ledbetter case, but the opinion states that enough was clearly disclosed from the testimony of the jurors to convince the Court that this was a manner, way, or at least the implied agreement whereby the fine was determined in the case.

"The Court understands the law to be that there must be an agreement in advance to render a verdict for the quotient so found, and if this is true the verdict will be set aside. This principle of law is followed throughout all the decisions in Alabama, including Harris v. State [241 Ala. 240], 2 So.2d 431, and also Sanders v. State [243 Ala. 691], 11 So.2d 740.

"In the Harris case, supra [241 Ala. 240, 2 So.2d 434], the Supreme Court of Alabama says as follows: 'If, however, there is no agreement that the average estimate shall be binding, and the averaging of estimates is done merely for the purpose of arriving at a working basis which the jurors are to be free to accept or reject as they see fit, a verdict, to which the jurors subsequently agree is binding, whether it be for the sum which is the average of the amount fixed by the individual jurors * * *, or for some other amount.' A number of cases are cited in the Harris case upholding this principle of law.

"The Court in overruling the motion in this case finds from the evidence that there was no prior agreement that the amount of years ascertained by using the figures was to be binding on the jury, and it is the opinion of the Court that under the evidence the jurors arrived at their verdict each one individually as shown by a poll of the jury, at the time or after the verdict had been reached.

"There are a number of authorities in Alabama dealing with quotient verdicts, but the Court does not deem it necessary to cite all these in connection with the ruling in this case.

"Filed Nov. 13, 1946
    "Frank Farris,
        "Clerk,

                "Roy Mayhall
                        "Judge"

Upon due and deliberate consideration we give our full approval and accord to the foregoing opinion and hold, there was no error in overruling the motion for a new trial.

Affirmed.