**A. W. HAWKINS, Incorporated,**
**Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 7396.**

United States Court of Appeals
Fourth Circuit.

Argued April 1, 1957.

Decided May 15, 1957.

John Douglas Clark, Falls Church, Va., for appellant.

A Andrew Giangreco, Asst. U. S. Atty., Arlington, Va. (L. S. Parsons, Jr., U. S. Atty., Norfolk, Va., on brief), for appellee.

Before PARKER, Chief Judge, SOBELOFF, Circuit Judge, and WILLIAMS, District Judge.

SOBELOFF, Circuit Judge.

A motor carrier, A. W. Hawkins, Inc., having been convicted on an information containing seven counts charging violations of Section 322(g) of Title 49 U.S.C.A., by wilfully and knowingly altering and falsifying records required to be kept by the regulations of the Interstate Commerce Commission, brings this appeal.

The appellant corporation, whose headquarters are in Culpeper, Virginia, is the holder of an Interstate Commerce Commission certificate of convenience and necessity, and is engaged in hauling various commodities over regular routes. The regulations of the Interstate Commerce Commission require every driver of a vehicle for an interstate carrier to make a daily log showing the actual time spent by him in connection with the work of the carrier. The specific charges are that the appellant altered and falsified the logs of Burgess Leake, who operated its milk run from Culpeper to Washington, D. C. This truck carried no other commodities.

I.

As the appellant challenges the legal sufficiency of the evidence, we turn first to this question. Carbon copies of the logs, which the driver retained as required by the regulations, were loaned by him to a government investigator, who, on comparing them with the original copies in the possession of the employer, found certain discrepancies. It was apparent on inspection, and not disputed at the trial, that the employer's original copies contained alterations not appearing in the driver's copies. Thus, on seven separate dates specifically charged in the indictment, the unaltered record in the driver's possession shows total driving and other on-duty time of from eleven to thirteen hours each day, while the original copy of the record, as altered in the defendant's office, after it was turned in by the driver, showed totals of only ten hours worked on each of these days. The office clerk, who made the alterations, testified that she did so upon instructions of the Vice President and General Manager of the company. The defense was that the alterations were not intended to falsify true entries, but to correct false ones.

A time clock was also maintained by the appellant, which its drivers were required to punch morning and evening; and the time clock records agreed substantially with the driver's copy and not with the alterations made by the appellant upon its copy. The appellant sought in the District Court to impeach its time clock records, claiming that sometimes employees set the clock back or forward, or had other employees punch the clock for them in their absence. However, this and the other surrounding circumstances, such as conflicting statements said to have been made to the Labor Department's investigators by the defendant's officers, raised a purely factual issue for the jury.

856

Beyond question, the evidence furnished a sufficient basis for submitting to the jury the issue whether the alterations were made in good faith to correct a record believed to be erroneous, or with wilful intent to falsify. The Court's charge meticulously and correctly instructed the jury that the mere alteration, if made with honest purpose, would not justify a finding of guilt, and that before there could be a conviction it was necessary for the jury to be convinced beyond a reasonable doubt that the alteration was made with knowledge on the defendant's part that the log as changed would not speak the truth. It is, of course, proper to draw inferences as to intent from the circumstances under which an act was done and from subsequent conduct and statements, for that is usually the only way a state of mind can be proved; direct proof is seldom available.

II.

After the trial the foreman of the jury, in a letter written "after considerable deliberation," communicated to the District Judge the juror's feeling that the jury was confused and that the conviction was based primarily on suspicion rather than on known facts and on the Court's instructions. A motion for a new trial was predicated upon this letter. Such attempts to impeach verdicts by the declarations or testimony of jurors are not unknown, but are rarely successful. There are practical considerations of high importance. It would introduce elements dangerous to fairness and impartiality in the judicial process to allow jurors to impair their verdicts after they have dispersed and opportunity has been given for the operation of influences that had been carefully guarded against in the courtroom. Accordingly, the rule, from which deviation is seldom permitted, is that "the testimony of jurors should not be received to show matters which essentially inhere in the verdict itself." Hyde v. U. S., 225 U.S. 347, 384, 32 S.Ct. 793, 808, 56 L.Ed. 1114; Rakes v. U. S., 4 Cir., 169 F.2d 739, 745.

The Court here denied a new trial. We think its action was correct; undeniably it was not an abuse of judicial discretion. On a motion for a new trial, the District Judge may in his discretion set aside a verdict if he deems it in the interest of justice to do so, and the exercise of such discretion is ordinarily unreviewable. Trout v. Cassco Corp., 4 Cir., 191 F.2d 1022.

III.

The defendant argues that it is in any event not subject to the provisions of Section 322(g) of Title 49 U.S.C.A., which makes it a criminal offense knowingly and wilfully to falsify, destroy, mutilate, or alter any report or record required to be made or kept. The reason advanced is that Title 49, § 303(b), U.S. C.A., exempts certain classes of carriers and that, particularly, Subsection 303(b)(6)[1] exempts motor vehicles used in carrying agricultural commodities and fish, if the vehicles are not used in carrying any other property or passengers for compensation. It is claimed that an agricultural commodity, milk, was the only article carried by the truck driven by Burgess Leake, the defendant's employee whose report or log was altered by the

1. § 303(b):
"Nothing in this chapter, except the provisions of section 304 of this title relative to qualifications and maximum hours of service of employees and safety of operation or standards of equipment shall be construed to include * * * (6) motor vehicles used in carrying property consisting of * * * or agricultural (including horticultural) commodities * * *."

Title 49, § 304, provides in relevant part:

"Powers and duties of commission—(a) Powers and duties generally
"It shall be the duty of the Commission—
"(1) To regulate common carriers by motor vehicle as provided in this chapter, and to that end the Commission may establish reasonable requirements with respect to continuous and adequate service, transportation of baggage and express, uniform systems of accounts, records, and reports, preservation of records, qualifications and maximum hours of service of employees, and safety of operation and equipment."

defendant. It is asserted, therefore, that the act of alteration could not constitute a crime.

We do not agree, however, that the exemption is so broad, for it is in terms made inapplicable to those provisions that relate to "qualifications and maximum hours of service of employees and safety of operation or standards of equipment." Carriers of agricultural commodities are not exempt from keeping proper logs and other records pertaining to hours of service. The keeping of such records is directly related to the matter of hours worked by the truck drivers, which in turn has a recognized relation to safety. Attempts by regulation and by legislation to protect the public from the hazards of vehicle operation by fatigued drivers are too familiar to require us to labor the point. Where, as here, the language of the statute is clear and unambiguous, we have no occasion to consider the statement, to which we are referred, made by a witness appearing before the Congressional Committee, who, speaking of the exempting amendment, may have indicated a broader interpretation of the exemption. The plain language of the statute governs.

We find no error in the proceedings of the District Court, and its judgment is

Affirmed.

Cameron, Circuit Judge, dissented on petition for rehearing.