346 So.2d 22 (1977)
Clarence WHITE
v.
STATE.
6 Div. 20.
Court of Criminal Appeals of Alabama.
March 29, 1977.
Rehearing Denied April 19, 1977.
*23 Robert R. Bryan, Birmingham, for appellant.
William J. Baxley, Atty. Gen., and Barry V. Hutner, Asst. Atty. Gen., for the State, appellee.
BOOKOUT, Judge.
Second degree murder; sentence: thirtyfive years imprisonment.
The appellant was indicted for the murder of Felix Underwood, a Birmingham policeman. While the events surrounding the murder were quite bizarre, the facts were not in dispute at trial, and they need not be stated in order to dispose of the present appeal. The only dispute at trial was whether or not the appellant was sane at the time he killed Officer Underwood. M'Naghten's Case, 8 Eng.Rep. 718 (H.L. 1843); Parsons v. State, 81 Ala. 577, 2 So. 854 (1886).
The evidence presented by the appellant regarding the sanity issue consisted of testimony by experts and members of the appellant's family. The evidence, both in quantity and quality, was to the effect that the appellant was insane on the day of the killing. The State called Bill Carter, a medical assistant, who worked at the county jail where the appellant was incarcerated after the killing. He observed the appellant for a very short time each day over a period of six weeks. It was his opinion that the appellant was sane. That testimony, completely contrary to all expert testimony, presented a question for the jury. The jury is not bound to accept expert testimony if there is other legal evidence to support their verdict. Neither is the jury bound to find in favor of the side offering the largest number of witnesses. See: Pickett v. State, 37 Ala.App. 410, 71 So.2d 102, cert. denied 260 Ala. 699, 71 So.2d 107 (1954); Christian v. State (Ms. August 31, 1976) Ala.Cr.App. (presently pending on certiorari in the Alabama Supreme Court).
The appellant's sole contention of merit on appeal is whether or not there was a proper determination of the appellant's competency to stand trial. Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); Seibold v. Daniels, D.C., 337 F.Supp. 210 (1972); Wheeler v. State, 47 Ala.App. 457, 256 So.2d 197 (1971); Duncan v. State, 46 Ala.App. 732, 248 So.2d 771 (1971). The killing took place on October 7, 1973. The appellant was indicted on April 17, 1974, and committed to Bryce Hospital on October 9, 1974. He was returned to the Jefferson County Jail in early 1975. A competency hearing was held, and the appellant was found to be competent during the week of April 14, 1975. The trial from which the present appeal has been taken began on May 19, 1975. Between April 14 and May 19, a trial was held which ended in a mistrial because the jury could not agree on a verdict.
At the second trial, on May 19, 1975, the appellant's counsel argued that another hearing should be held to determine whether or not the appellant was competent to stand trial. He contended that the jury's verdict of competency which was rendered at the competency hearing was not unanimous. He also contends that the appellant's condition had deteriorated since the first competency hearing and that therefore another competency hearing was required.

I
At the close of the competency hearing, the jury was divided eleven to one. Juror Ward, a woman, was the lone holdout. The jury came out three times with a verdict that the appellant was sane and competent to stand trial. That jury was polled each time. On the first occasion, Mrs. Ward said she did not concur in the result. On the second occasion, she stated she did not agree and that she was not going to change her mind. The following colloquy was then held between the judge and the foreman of the jury:
"THE COURT: Let me ask you, Mr. Guthrie. Is that your opinion, after having been with the Jury and been with *24 their deliberations? Or would the Juryis the Jurywould they go out and deliberate again for a few minutes, and if they can't reach a verdict, let me know.
"FOREMAN CHARLES A. GUTHRIE, JR.: All right.
"THE COURT: Thank you.
"(Whereupon the Jury then left the courtroom at 4:08 P.M. to resume deliberations and then returned to the courtroom at 4:48 P.M., at which time the following occurred:)
"THE COURT: Mr. Guthrie, have you reached a verdict?
"FOREMAN CHARLES A. GUTHRIE, JR.: We have.
"THE COURT: Would you read it, please sir.
"FOREMAN CHARLES A. GUTHRIE, JR.: We, the Jury, find the Defendant to be sane and competent to stand trial.
"THE COURT: Thank you. And Mr. McCombs, would you poll the Jury.
"(Whereupon, the Jury was then polled, all giving affirmative answers to their verdict.)"
Mrs. Ward subsequently testified at a hearing which immediately proceeded the May 19, 1975, trial. We quote a condensed version of the testimony from appellant's brief as follows:
"I was voting that he was incompetent. So the bailiff told me, you know, we cannot accept this. It is unacceptable, it has to be either competent or incompetent but you cannot have a split decision. I came out and said in court twice that I have grave reservations about it. That I did not agree with the verdict. . . . Well, when we finally went back the third time I began to get the idea that eleven to one is a majority vote so that's the way it goes. . . . It was like eleven to one. I was never gonna change their minds and they were never gonna change mine. . . . If you come out three times and you're told that you can have only one verdict, you know, and you say I don't agree, and they keep sending you back, I don't know how else to say I don't agree with something. . . . I said I don't agree with this. I said that twice, you know. . . ."
There was absolutely no evidence presented which would indicate that the judge or bailiff at the competency hearing had told the jurors that everyone had to go along with the majority. There was also absolutely no evidence presented which would indicate that the jurors had agreed to be bound by a majority vote. See: Harris v. State, 241 Ala. 240, 2 So.2d 431 (1941). Absent evidence of misconduct, we will not attempt to delve into why an individual juror votes a particular way. Were we to overturn the verdict of the competency jury because Mrs. Ward "began to get the idea" that the majority ruled on a jury, then this Court would be in the position of reviewing every verdict in which a juror subsequently expressed doubt, confusion, or misapprehension over the reason for his or her vote. This we will not do.
We pretermit discussion of whether or not Mrs. Ward's testimony alone would be the proper vehicle to attack the verdict that appellant was sane and competent to stand trial. See: 7 Alabama Digest, Criminal Law.

II
The trial judge held, and we affirmed above, that there was a proper determination of competency during the week of April 14, 1975. Appellant's counsel, while demanding another competency hearing on May 19, 1975, had the following exchange with the trial judge:
"MR. BRYAN: As his attorney I don't feel that he's competent.
"THE COURT: You didn't feel that he was competent then [week of April 14, 1975].
"MR. BRYAN: I sure didn't. And my understanding of the criteria is that the defendant must be able to rationally consult with his attorney in preparing the defense.
"THE COURT: I assume that was the issue that the jury tried on the fifteenth.
"MR. BRYAN: Are you denying us a competency hearing?

*25 "THE COURT: I'm gonna tell you what I'm gonna do in just a minute, but I want you to get into the record anything that you want in, that's all.
"MR. BRYAN: I've got witnesses that I can call on the competency issue.
"THE COURT: I'm talking about a change.
"MR. BRYAN: In my opinion his condition has deteriorated since the last hearing that we had.
"THE COURT: What do you base that observation on?
"MR. BRYAN: My observations of him.
"THE COURT: Any fact?
"MR. BRYAN: I consider that a fact Your Honor.
"THE COURT: Is there any specific fact that you wish to relate to?
"MR. BRYAN: Yes, sir. I can go into conversations that I have had and also that others have had with him.
"THE COURT: That was different than prior to the fifteenth?
"MR. BRYAN: Yes, sir. In my observations there's been a continued deterioration and I don't know whether it's lack of medication or what."
It is true that where it appears to a trial judge that there is a bona fide doubt as to an accused's present mental competency, the judge must immediately and on his own motion cease all proceedings, regardless of the state of the trial, and inquire into the matter. Pate, supra. However, the colloquy above contains nothing more than a bold assertion by the appellant's counsel that in his opinion the appellant was incompetent. We hold that the trial judge did not err in finding that, based on the previous verdict of competency, the assertions of the appellant's counsel did not raise a bona fide doubt as to the appellant's competency to stand trial. We should not be construed as holding that an attorney's testimony cannot by itself raise a bona fide doubt as to a defendant's competency, nor should we be construed as holding that once a defendant has been found competent to stand trial that later additional developments cannot again raise a bona fide doubt as to his competency.
We merely hold that in the instant case, where only five weeks elapsed between the competency hearing and trial, the bare assertion of appellant's counsel that appellant is incompetent is alone insufficient to overturn the finding of the trial judge.
AFFIRMED.
All the Judges concur.

On Rehearing
BOOKOUT, Judge.
Appellant, on rehearing, contends that the facts do not support our statement, supra:
"There was absolutely no evidence presented which would indicate that the judge or bailiff at the competency hearing had told the jurors that everyone had to go along with the majority . . .."
Appellant misconstrues the testimony of Mrs. Ward. She did not testify that the bailiff or the judge told her that she must vote with the majority. There is a great difference between telling jurors their verdict must be unanimous and in telling them that the majority governed. She testified that she was instructed that the jury could not render a "split decision."
"A juror may not testify either in impeachment or support of his verdict as to what effect a matter had upon his mind as causing him to agree to the verdict, as to why he agreed to the verdict, or concerning the mental processes by which he came to agree to the verdict.. . ."
See: McElroy, The Law of Evidence in Alabama, (2nd Ed.), Vol. I, § 94.06 et seq., pp. 243-246.
OPINION EXTENDED; APPLICATION OVERRULED.
All the Judges concur.