[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 419 
The appellant was indicted and convicted for first degree murder; the shotgun slaying of her son-in-law, Robert Earl Faircloth. In compliance with the jury verdict, sentence was fixed at life imprisonment.
The State's evidence was sufficient to prove appellant's guilt beyond any reasonable doubt. The evidence was conflicting in certain instances, especially in regard to appellant's claim of self-defense; however, any differences of fact were resolved by the jury. It is not the function of this court to reweigh the evidence. This court is required to review the evidence presented in the light most favorable to the State, Bass v.State, 55 Ala. App. 88, 313 So.2d 208 (1975), and not substitute its judgment for that of the jury, Cumbo v. State, Ala.Cr.App., *Page 420 368 So.2d 871 (1978), cert. denied, Ala., 368 So.2d 877 (1979).
Briefly, the pertinent facts reveal that the deceased had physically and emotionally abused his wife, Mary Ella, on a frequent basis during their five year marriage. There was also evidence that the deceased had abused his children. Appellant became aware of the deceased's abusive behavior approximately two years before she killed him, although Mary Ella had tried to keep it a secret.
Appellant came to stay with Mary Ella and the deceased the first week of September, 1978, to "take care of the children" while Mary Ella was in the hospital for an operation on her hand. When her daughter returned home, appellant witnessed the deceased twist her stitched hand "for no reason at all." Appellant also saw the deceased whip the couple's three-year-old and one-year-old children with a doubled belt and "hit them under the throat with his hand."
Later in the month Mary Ella returned to work, and appellant agreed to continue taking care of the children until her daughter could find a baby-sitter. On one occasion during this period, appellant heard the deceased hitting Mary Ella with a belt and threatening "to knock her teeth down her throat." When appellant told the deceased to stop hitting her daughter, the deceased told her, "[I]f you don't shut your mouth . . . I'll give you some of what I'm giving her." Appellant stated that she left the room because she did not want her teeth knocked out. Appellant testified that the deceased was generally "mean and cruel" to Mary Ella.
Later, on the morning of September 28, 1978, Mary Ella left for work in her station wagon between 6:00 and 7:00 a.m. When she got off around 8:15 or 8:30 that evening, the deceased was waiting outside in his truck. The deceased then followed Mary Ella home, and upon arriving "he started twisting my arms and everything and he told me I never would drive the car anymore." The deceased took Mary Ella's car keys and left again in his truck. The deceased worked at the Anderson Peanut Company and reported for work that night at 9:00 p.m. Appellant witnessed the arm twisting through the mobile home window. Appellant, Mary Ella, and the children went to bed at approximately 10:00 p.m.
Around 1:00 or 1:30 a.m. on September 29, 1980, the deceased returned home to get a pot of coffee. The deceased woke Mary Ella up snatching her by her hair, slapped her across the bed, and accused her of infidelity. Appellant testified that she heard the deceased hit her daughter and heard her crying; "I stood there to see just how hard he was going to whip her, and he turned around and he says I will be back to kill you [Mary Ella]." The deceased then left and went back to work in Mary Ella's car. Appellant stated that she was too scared to leave the mobile home and could not sleep the rest of the night even though she had taken pain medication for her back problems and valium for her "nerves."
Appellant heard the deceased return from work between 5:00 and 5:30 a.m. and saw him standing outside the mobile home with his hands in his pocket. Appellant started toward her daughter's room to warn her the deceased was home when she saw the deceased "coming right straight at me." Appellant did not have the time to wake Mary Ella; "I thought that there was murder in his eyes . . . and he was so close to me at that time that I think he was fixing to grab me." Appellant testified that she got a gun out of the broom closet, stepped back, and pulled the trigger.
Mrs. Mary Jordan, a next-door neighbor to the Faircloths, testified that she heard two gunshots around 5:00 a.m. on September 29, 1980, as she was getting ready to go to work. She stated that the shots were spaced three to four minutes apart. Mrs. Jordan was sure it was minutes rather than seconds. Approximately ten minutes after hearing the gunshots, the appellant came to Mrs. Jordan's door and told her that she had shot the deceased, to call an ambulance and the sheriff. Appellant also told Mrs. Jordan that the deceased was lying in the yard and she "hoped he was dead." Mrs. Jordan *Page 421 
stated that appellant was not upset or crying, but "seemed real calm."
After being properly advised of her constitutional rights, appellant voluntarily gave a signed confession at the scene admitting that she had shot the deceased. She also voluntarily retrieved the murder weapon from the closet and handed it to the authorities.
Allen Booth, Coroner for Pike County, again advised appellant of her constitutional rights at approximately 8:00 a.m. at the Pike County Jail. In the presence of Mr. Booth, the district attorney, Sheriff Anderson, and appellant's husband, the appellant voluntarily admitted that she shot the deceased twice.
Sheriff Anderson testified that when appellant was asked why she shot twice "she said she thought maybe he was winged or wounded like an animal and might run off and she wanted to make sure he was dead." Sheriff Anderson further testified that in another statement appellant told him she first shot the deceased on the top step to the mobile home and a second time on the bottom step. Coroner Booth's testimony concerning appellant's statements was similar in all respects.
Thorough searches inside the mobile home and of the mobile home's steps by several law enforcement personnel failed to reveal any bloodstains. The closest blood spots were discovered some forty-nine inches from the bottom mobile home step.
A careful examination of the murder scene did not reveal any weapons on or near the deceased. Two spent .12 gauge shotgun shells were recovered. Blood, skin, and bone fragments were discovered at the base of a pecan tree and on the grill of the station wagon parked near the deceased.
An autopsy revealed that the deceased received two gunshot wounds, one to the left elbow and one to the chest. Both shots were fired at close range, but because of the pattern spread the shot to the chest was conceivably fired at a lesser distance. The cause of death was due to massive bleeding from the chest wound.
 I
As repulsive as the deceased's abusive treatment of his family may have been and as frightened as appellant may have felt concerning the threat the deceased had made to her daughter some four hours earlier, based on the foregoing facts, there can be no doubt that each element of first degree murder was firmly established. Section 13-1-70, Code of Ala. 1975;Young v. State, Ala.Cr.App., 363 So.2d 1007 (1978). Proof of the corpus delicti was clearly shown prior to the admission of appellant's voluntary confession. Jones v. State, 260 Ala. 341,70 So.2d 629 (1954). Where there is evidence of first degree murder and also evidence of self-defense, a jury question is presented. Hutchens v. State, 207 Ala. 126, 92 So. 409 (1922);King v. State, Ala.Cr.App., 355 So.2d 1148 (1978).
The Alabama Supreme Court wrote in Byrd v. State, 257 Ala. 100,104, 57 So.2d 388 (1952):
 "The rule of self-defense is that persons may and must act on the reasonable appearance of things. While it is not required that where a person is menaced he must wait until a weapon is presented ready for deadly execution, yet the danger must be real or so manifestly apparent as to create a reasonable belief of presently impending peril to life or limb. In determining this question evidence most favorable to the defendant should be considered and if there is the slightest evidence tending to prove a hostile demonstration which can be reasonably interpreted as placing the accused, at the time of the killing, in apparent imminent danger to life or other grievous bodily harm then the matter of self-defense becomes a question of fact for the jury. . . ."
However, even if the evidence of self-defense is undisputed, the credibility of the defendant with respect to the evidence of self-defense is for the jury, and they may, in their discretion, accept it as true or reject it. Kemp v. State,278 Ala. 637, 179 So.2d 762 (1965); Mack v. State, Ala.Cr.App.,348 So.2d 524 (1977). The jurors are *Page 422 
not bound to accept the defendant's testimony as true or draw any inference of danger from the circumstances. Kemp, supra. These same rules apply where one invokes the doctrine of self-defense in the protection of a third person. See Mack, supra. Appellant's motion to exclude was properly overruled, and the affirmative charge was not due to be given. Walker v.State, 265 Ala. 233, 90 So.2d 221 (1956).
 II
The trial court properly denied appellant's pretrial motion to reduce the charge from first degree murder to second degree murder. Whether appellant's acts constituted first or second degree murder was a jury question. A trial judge may not determine the sufficiency of evidence prior to trial or resolve conflicts of fact where such is the function of the jury.
 III
The trial court did not err in admitting State's Exhibits 13, 14, and 16 which were photographs of the deceased taken at the funeral home several miles from the scene. The photographs were admitted during the testimony of Dr. G.R. McCahan, State Toxicologist. As a general rule photographs are admissible in evidence if they tend to prove or disprove some disputed or material issue, to illustrate or elucidate some other relevant fact or evidence, to corroborate or disprove some other evidence offered or to be offered, and their admission is within the sound discretion of the trial judge. Fletcher v.State, 291 Ala. 67, 277 So.2d 882 (1973); Thigpen v. State,50 Ala. App. 176, 277 So.2d 922 (1973). Photographs may be admitted if they tend to shed light on, strengthen, or to illustrate other testimony in the case. Chunn v. State, Ala.Cr.App.,339 So.2d 1100 (1976). Photographs which show wounds on a victim's body which tend to corroborate the testimony of a toxicologist as to the number and location of the wounds are admissible.Palmore v. State, 283 Ala. 501, 218 So.2d 830 (1969); Grant v.State, 250 Ala. 164, 33 So.2d 466 (1948).
Photographs of the deceased in a murder prosecution are not required to be taken only at the scene. Brown v. State,288 Ala. 684, 264 So.2d 553 (1972). It is proper in the same prosecution to admit photographs of the deceased made at the scene and also photographs of the deceased made at the funeral home. Baldwin v. State, 282 Ala. 653, 213 So.2d 819 (1968). It is also proper to introduce photographs of the deceased lying on his back with his shirt open which show the location of gunshot wounds. Allen v. State, 260 Ala. 324, 70 So.2d 644
(1954). Furthermore, photographs which depict the character and location of external wounds on the body of a deceased victim are admissible even though they are cumulative evidence based upon an undisputed matter. Hines v. State, Ala.Cr.App.,365 So.2d 320, cert. denied, Ala., 365 So.2d 322 (1978); Ellenburgv. State, Ala.Cr.App., 353 So.2d 810 (1977). The fact that a photograph is gruesome and ghastly is no reason for excluding it, if relevant, even if the photograph may tend to inflame the jury. Richards v. State, Ala.Cr.App., 337 So.2d 171, cert. denied, Ala., 337 So.2d 173 (1976). For these reasons the photographs objected to were properly admitted.
 IV
Appellant's statements made at the scene and at the Pike County Jail were properly admitted. The evidence is unequivocal that appellant was properly given her Miranda warnings prior to making the statements in each instance and that her statements were in all respects voluntary. Appellant said that she understood her rights before making the statements. Although there was evidence appellant had taken prescribed medication for pain and her nerves some four hours prior to shooting the deceased, there is no evidence that appellant suffered a diminished capacity either at the time of the shooting or at the time she made the statements. From all accounts appellant appeared calm and possessed of rational intellect after she killed the deceased and when she made the statements to the police officers. There is not *Page 423 
one trace of evidence that her statements were anything less than the product of her free will.
A confession need not be verbatim as related by the accused as long as it substantially and accurately reflects what the accused said. Dennison v. State, 259 Ala. 424, 66 So.2d 552
(1953); King v. State, Ala.Cr.App., 355 So.2d 1148 (1978). It is not error to admit both oral and written confessions. Thomasv. State, 249 Ala. 358, 31 So.2d 71 (1947).
Appellant did not object to the testimony of Coroner Booth or Sheriff Anderson pertaining to her statements. Constitutional rights may be waived where there is no objection. Carroll v.State, Ala.Cr.App., 370 So.2d 749, cert. denied, Ala.,370 So.2d 761 (1979); McBride v. State, Ala.Cr.App., 355 So.2d 750
(1978). However, we would point out that, while Sheriff Anderson's version of appellant's statements was not verbatim to that of Coroner Booth, their testimony was consistent in all pertinent parts and was in no way contradictory. Nonetheless, how similar these two witnesses' accounts of appellant's statements were is a question which attaches to the credibility of their testimony and not to the admissibility of the statements. Thus, from all the facts and circumstances, we hold that the trial court correctly admitted the statements.
 V
The record is unmistakable that appellant consented to allow the jury to separate during the trial. Section 12-16-9, Code of Ala. 1975, was complied with fully.
 VI
No objection was made at trial to Sheriff Anderson testifying after the rule had been invoked. Appellant raised the issue for the first time in his motion for new trial. Although the State's motion to strike appellant's motion for new trial was subsequently granted, a hearing on appellant's motion was had, and it was ascertained that Sheriff Anderson was in the courtroom for a short period of time during Coroner Booth's testimony. He testified, "I remember going in and sitting in the back just a couple of minutes or so maybe and then I was out." Sheriff Anderson further testified that he was an officer of the court, but did not serve as bailiff during appellant's trial. Appellant contended Anderson's presence in the courtroom prior to his testimony after the rule had been invoked caused reversible error. We disagree.
Two cases cited by appellant, Teague v. State, 245 Ala. 339,16 So.2d 877 (1944) and Raymond v. Pointer, 222 Ala. 518,133 So. 260 (1931), stand for the proposition that it is within the discretion of the trial court to permit a witness who has not been under the rule or who has violated the rule to testify, and that this is not reviewable unless abuse of discretion is shown. In Beddow v. State, 39 Ala. App. 29, 96 So.2d 175 (1956), cert. denied, 266 Ala. 694, 96 So.2d 178 (1957), cert. denied,355 U.S. 930, 78 S.Ct. 412, 2 L.Ed.2d 414 (1958), it was held that, where a witness has remained in the courtroom in violation of the rule, the trial court's decision as to his testifying or not is not open to review. It has specifically been held to be within the trial court's discretion to permit the sheriff to remain in the courtroom after the rule has been invoked. Denson v. State, 50 Ala. App. 409, 279 So.2d 580
(1973). An objection to the admission of testimony made for the first time in a motion for new trial cannot be considered.Acker v. State, 19 Ala. App. 592, 99 So. 663 (1924). A motion for new trial cannot take the place of an objection to the introduction of evidence. Pugh v. State, Ala.Cr.App.,355 So.2d 386, cert. denied, Ala., 355 So.2d 392 (1977).
The purpose of sequestration is to obviate as far as possible one witness's trying to make his testimony consistent with that of another. Rowell v. State, 53 Ala. App. 286, 299 So.2d 332
(1974). Appellant's prior contention that Sheriff Anderson's testimony was not supported by the testimony of Coroner Booth defeats his argument here. As the court stated in Beddow, supra, "the efficacy of sequestration — *Page 424 
which can only occur during trial — is probably overrated. The law has moved from oath — taking to cross examination in its search for the truth." 39 Ala. App. at 31, 96 So.2d 175. We hold, therefore, that even had a timely objection been made at trial the trial court was well within its discretion in permitting Sheriff Anderson to testify.
 VII
The trial court correctly sustained objections by the State to evidence proffered by appellant that was clearly hearsay in nature. A careful review of each ruling reveals no error. Conversations not occurring in the accused's presence or hearing are inadmissible, being hearsay. Mays v. State,218 Ala. 656, 120 So. 163 (1929); Hamlett v. State, 19 Ala. App. 218,96 So. 371 (1923).
 VIII After eliciting testimony from three character witnesses, appellant called witness Richard Peters, and the following exchange occurred:
"THE BAILIFF: He's not here.
 "MR. WIGHAM [Defense Counsel]: How about Mr. Bill [sic] Shehan?
 "MR. FOLMAR [District Attorney]: Boyd, we would stipulate if this is another character witness what they would testify to.
 "MR. WIGHAM: You will stipulate to the good character?
 "MR. FOLMAR: We would just stipulate as to what their testimony would be.
 "MR. WIGHAM: Your Honor, I think it has value to putting them on the stand unless we stipulate to her good character and if that's the case, we'll take the stipulation.
 "MR. FOLMAR: We would just stipulate, Your Honor, to what their testimony would be.
 "MR. WIGHAM: I would rather for them to testify, Your Honor. If they will stipulate to the good character, we will leave them alone.
"THE COURT: I don't think he is going to do that."
No objection was made, and Ben Shehan was next called to testify. Appellant contends that although no objection was made the trial court's remark caused ineradicable harm. Appellant submits that the remark indicated to the jury a belief appellant was a person of bad character. These arguments are meritless.
It is apparent that the district attorney in an effort to expedite matters simply offered to stipulate the substance of Richard Peters's testimony. He was not offering to stipulate that appellant had good character. The trial judge merely pointed this out to end the exchange. The remark was not prejudicial and cannot be reasonably interpreted as being a comment on appellant's character. A trial judge's casual remarks concerning testimony which are addressed to counsel and not the jury do not constitute prejudicial comments on the evidence. Copeland v. State, Ala.Cr.App., 377 So.2d 1 (1979).
Furthermore, the law is clear that unless allegedly prejudicial remarks by the trial court are objected to the remarks are not subject to review except where they are grossly improper. Nichols v. State, 267 Ala. 217, 100 So.2d 750; Dolvinv. State, 51 Ala. App. 540, 287 So.2d 250 (1973). There must be either an objection, a motion to exclude, or a motion for the jury to disregard the statements before error will be preserved. Gilliland v. State, 291 Ala. 89, 277 So.2d 901
(1973). Thus, there is nothing before us to review.
 IX
No exception was taken to the trial court's oral charge, both sides announcing "satisfied." However, seven of appellant's twenty-five requested charges were refused. They were:
"Defendant's Charge Number 1
 "He who invokes self-defense in protection of third person is placed in shoes of such person and that if jury is reasonably satisfied that at time of fatal shot, accused's daughter was in imminent danger *Page 425 
of losing life, accused should be acquitted."
"Defendant's Charge Number 2
 "The law gives a person the same right to use force reasonably necessary under the circumstances to protect herself from great bodily harm as it does to prevent her life being taken, and that she may excusably use this necessary force to save herself from any felonious assault."
"Defendant's Charge Number 5
 "If you reasonably believe that the Defendant was free from fault and that the Defendant acted in self-defense of herself, and or her daughter then she was entitled to kill in self-defense."
"Defendant's Charge Number 10
 "I charge you, that if there are the facts proved to the satisfaction of the jury which are inconsistent with the Defendant's guilt, that is sufficient to create a reasonable doubt in your minds, then the jury should give the Defendant the benefit of the doubt and acquit her."
"Defendant's Charge Number 15
 "A reasonable doubt is sometime said to be a doubt for which a reason can be given; it must spring from the evidence in the case, and the evidence only; if, after careful consideration of all the evidence you have a doubt arising from the evidence or any part of the evidence of the Defendant's guilt, and if such doubt seems to be reasonable to you, then the Defendant should be acquitted."
"Defendant's Charge Number 19
 "The accused is not required to establish the defense to the satisfaction of the jury; and that fault of accused depriving her of her right to self-defense must be shown by the prosecution beyond a reasonable doubt."
"Defendant's Charge Number 23
 "Prosecution must prove each of the elements of murder and that proof must be positive enough to show that there was no justification or that defendant was not free from fault in bringing on fatal encounter."
Requested charges are the proper way for additional instructions to be given where an oral charge is not as comprehensive as a party desires. Harris v. State, Ala.Cr.App.,358 So.2d 482, 486, cert. denied, Ala., 358 So.2d 487 (1978). We note at the outset that each of the refused charges dealt with the doctrine of self-defense, defense of a third person, or reasonable doubt. The trial court's oral charge comprehensively covered self-defense and reasonable doubt. For that reason alone requested Charges 2, 10, 15, 19, and 23 were properly refused. Chambers v. State, 264 Ala. 8, 84 So.2d 342
(1955); Widner v. State, Ala.Cr.App., 376 So.2d 1132, cert. denied, Ala., 376 So.2d 1135 (1979); Fitch v. State, Ala.Cr.App., 372 So.2d 1328, cert. denied, Ala., 372 So.2d 1331
(1979). In addition, refused Charges 2 and 23 were substantially covered, respectively, in given Charges 11 and 24. Walker v. State, 265 Ala. 233, 90 So.2d 221 (1956). Furthermore, refused Charges 2, 19, and 23 are elliptical, ungrammatical, and confusing. Harris, supra. While not holding that refused Charges 1 and 5 were otherwise correct propositions of law as written, we find that these charges were also substantially covered in given Charges 12, 13, 14, and 25 and for that reason were properly refused. Walker, supra.
 X
After retiring and commencing its deliberations, the jury returned to the courtroom and requested the trial judge "to re-read the difference between 1st degree murder and 2nd degree murder." The trial judge complied with this specific request, but appellant excepted because the entire oral charge was not repeated.
The actions of the trial court were correct.
 "When a jury calls for additional instruction and clearly delineates the area of its request, it is usually better for the trial court to remain within such area. To do otherwise ofttimes tends to appear to place the trial judge in the role of an interested advocate rather than an impartial arbiter." East v. State, Ala.Cr.App., 339 So.2d 1104, 1106 (1976). *Page 426 
 XI
Appellant was sentenced and gave notice of appeal on May 30, 1979. Appellant's motion for new trial was filed with the Pike County Circuit Clerk on June 7, 1979. The trial court first received notice that the motion for new trial had been filed on August 27, 1979. A hearing was set to consider the merits of the motion on September 24, 1979. Appellant was granted a continuance, and the hearing was reset for September 27, 1979. On that date the State's motion to strike appellant's motion for new trial was granted due to its untimely presentation to the trial court. This ruling by the trial court was correct.
Interim Rule 4 (b) of the Alabama Rules of Appellate Procedure controls this issue. In pertinent part it reads:
 "A motion for a new trial based on newly discovered evidence will similarly extend the time for appeal from a judgment of conviction if the motion is made before or within 30 days after entry of judgment. The motion for new trial must be called to the attention of the trial court at the time of filing, ruled upon at presentation, or hearing thereon continued to a date certain and ruling of trial court made before expiration of such continuance. . . ."
(Emphasis added.)
Assuming a motion for new trial is timely filed within thirty days after entry of judgment, Interim Rule 4 (b), from its plain reading, has two additional requirements: (1) the motion for new trial must be brought to the attention of the trial court at the time it is filed; and (2) the motion must be ruled upon at the time it is presented or on a date certain in the future when a hearing is had on the motion. Thus, it is incumbent upon one filing a motion for new trial to bring it to the attention of the trial court within thirty days after entry of judgment. Filing the motion within thirty days after entry of judgment only completes the first step; the motion must also be brought to the attention of the trial court within that time.
Here, the motion was timely filed within the thirty day period. However, the trial court was first apprised of this action eighty-nine days after entry of judgment. This defect in notification to the trial court was fatal. The first of the additional requirements listed above was not met. It does not matter that on August 27 the trial court initially set a hearing on the motion for September 24 and later continued the hearing until September 27. The record is unequivocal that the trial court had not received timely notice of the motion at the time it set the hearings.
Even had the procedural requirements of Interim Rule 4 (b), Alabama Rules of Appellate Procedure, been met, we find no merit to the allegations presented in appellant's motion for new trial. Each issued raised in the motion, except one, has been answered in this opinion. As to that additional issue, we need only cite Atwell v. State, Ala.Cr.App., 354 So.2d 30, 37
(1977), cert. denied, Ala., 354 So.2d 39 (1978), for the following principles:
 "After a case has been submitted to the jury, their deliberations in the jury room are not subject to review. Gamble, McElroy's Alabama Evidence, 3rd Ed., § 94.06, p. 207. Public policy forbids that a juror disclose deliberations in the jury room and demands that they be kept secret. Taylor v. State, 18 Ala. App. 466, 93 So. 78 (1922); Harris v. State, 241 Ala. 240, 2 So.2d 431 (1941). Permitting such impeachment would open the door for tampering with the jury after the return of their verdict. Hawkins v. United States, 244 F.2d 854, 856 (C.A.Va. 1957).
 "Consequently a jury's verdict is not subject to impeachment by the testimony of jurors as to matters which transpired during the deliberations. Fox v. State, Ala.Cr.App., [49 Ala. App. 204] 269 So.2d 917
(1972). A juror may not, either in impeachment or in support of his verdict, testify as to his mental operation in reaching the verdict."
We have carefully examined each issued raised in brief and presented at oral argument. In addition, we have searched the *Page 427 
entire record for error as required by law and find no error prejudicial to appellant.
AFFIRMED.
All the Judges concur.